12-1011-cv
Poventud v. City of New York

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: December 20, 2012      Decided: April 19, 2013)

Docket No. 12-1011-cv

———————————

Marcos POVENTUD,

*Plaintiff-Appellant,*

— v. —

CITY OF NEW YORK; Robert T. JOHNSON, in his official capacity as District Attorney for Bronx County; Frankie ROSADO, Kenneth UMLAUFT, Christopher DOLAN, and Daniel TOOHEY, individually and as members of the New York City Police Department,

*Defendants-Appellees.*

———————————

Before: JACOBS, *Chief Judge*, CALABRESI and SACK, *Circuit Judges*.

Appeal from a decision of the United States District Court for the Southern District of New York (Batts, *J.*) granting summary judgment to defendants and dismissing plaintiff's 42 U.S.C. § 1983 claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Because plaintiff is no longer in custody, federal habeas relief is unavailable to him. Under the law of this Circuit, plaintiff must have access to a *federal remedy*, either under the habeas statute or under § 1983. As plaintiff cannot avail himself of habeas relief, he must be allowed to pursue his claims under § 1983. Accordingly, *Heck*'s exception to § 1983's broad coverage does not apply to his claims. We therefore VACATE the decision of the district court and REMAND for further proceedings.

Chief Judge Jacobs dissents in a separate opinion

> JOEL B. RUDIN, Esq., Law Offices of Joel B. Rudin, New York, NY, and Julia P. Kuan, Romano & Kuan, New York, NY, *for Plaintiff-Appellant.*
>
> MORDECAI NEWMAN, Larry A. Sonnenshein, and Rachel Seligman Weiss, *of counsel*, *for* Michael A.

1

Cardozo, Corporation Counsel of the City of New York, *for Defendants-Appellees*.

CALABRESI, *Circuit Judge*:

In June 1998, plaintiff-appellant Marcos Poventud was convicted of attempted murder in the second degree, attempted robbery in the first degree, assault in the first degree, and criminal possession of a weapon in the second degree. He was sentenced to 10 to 20 years in prison. Poventud ultimately succeeded in having his conviction vacated, but the prosecution appealed, and Poventud was denied bail. Rather than await a new trial in custody, Poventud pled guilty to a lesser charge for which the penalty was a one-year sentence—a jail term that Poventud had already served.

In May 2007, Poventud brought the instant action under 42 U.S.C. § 1983, alleging *Brady* violations against the officials who conducted his original investigation and prosecution. In July 2009, Poventud stayed this proceeding pending the outcome of a state-court motion to invalidate his guilty plea. Poventud later withdrew the state motion without prejudice and resumed this suit. In June 2011, defendants moved for summary judgment. The District Court (Batts, *J.*) granted the motion in March 2012, ruling that Poventud's § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Poventud v. City of New York*, No. 07 Civ. 3998 (DAB), 2012 WL 727802, at *3 (S.D.N.Y. Mar. 6, 2012).

We disagree. Because Poventud is no longer in custody, and therefore can no longer bring a federal habeas suit, *Heck*'s narrow exception to § 1983's otherwise broad coverage does not apply. Poventud may bring suit under § 1983 regardless of any defenses which might arise based on his subsequent guilty plea to the lesser charge.

2

Accordingly, we vacate the District Court's decision granting summary judgment and remand for further proceedings.

## BACKGROUND

The parties dispute various points in the factual record. When, as here, we review a grant of summary judgment dismissing a complaint, "we construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in his favor." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 217 (2d Cir. 2006).

In March 1997, Younis Duopo was robbed and shot in the head or neck by two men sitting in the back seat of a livery cab that Duopo was driving through the Bronx. Later, Frankie Rosado, a detective, found a wallet on the floor of the cab by the front passenger seat. Somehow the NYPD Crime Scene Unit had missed the wallet. The wallet contained a pair of old photo I.D. cards belonging to Francisco Poventud, brother of the plaintiff-appellant. When investigators showed Duopo a photo array containing one of the photos of Francisco Poventud (who allegedly looks nothing like his brother), Duopo positively identified it as a picture of his assailant. At the time, however, Francisco Poventud was incarcerated and could not possibly have committed the crime. Detectives then showed Duopo photo arrays containing a picture of Marcos Poventud. Only upon seeing Marcos's photo for the fourth time did Duopo identify Marcos as the shooter. Marcos was arrested, identified (by Duopo) at a line-up, and indicted, along with a co-defendant, Robert Maldonado, whom Duopo also identified. Investigators left no record of the false identification of Francisco Poventud; they also did not disclose it

3

to defense counsel or to the Bronx County prosecutors; and they did not preserve the photo array.

Marcos Poventud learned all of this only during the 2003 retrial of Robert Maldonado. In December 2004, Poventud filed a motion under N.Y. C.P.L.R. § 440.10 to vacate his conviction on the ground that the prosecution withheld exculpatory evidence. The New York Supreme Court for Bronx County granted this motion in October 2005. The prosecution filed a notice of appeal; successfully argued that Poventud be denied bail; and offered him immediate release in exchange for a guilty plea to a non-violent, Class E felony charge of third-degree attempted robbery. By this time, Poventud had been incarcerated for nearly nine years. Poventud testifies that during his imprisonment he endured gruesome and repetitive physical and sexual abuse; that he attempted suicide; and that he suffered from depression and post-traumatic stress disorder. In January 2006, Poventud accepted the terms of the plea bargain and went home.

Poventud now contends that he was deceived into pleading guilty. He alleges that the assistant district attorney knew, but did not disclose, that the district attorney's office had decided not to perfect its appeal. Poventud alleges further that the ADA withheld crucial information from the defense. When he learned of these omissions, Poventud stayed the instant federal suit and moved in state court to have his guilty plea vacated as involuntarily given. The New York Supreme Court for Bronx County granted an evidentiary hearing on the question of voluntariness, but Poventud withdrew his motion without prejudice. He says he did this after learning that he had multiple myeloma, after nearly dying from kidney failure, and after undergoing bone and stem cell transplants and chemotherapy. Poventud asserts that he thought the stress and

4

infection risks of a new trial, together with the possibility, however remote, of returning to jail, would kill him. After withdrawing his state motion, Poventud resumed this federal action under 42 U.S.C. § 1983, in which he alleges violations of his federal due process and fair trial rights under *Brady v. Maryland*, 373 U.S. 83 (1963). He also sues the City of New York for failing properly to train its officers.

The district court found that, because plaintiff's guilty plea was to conduct that "necessarily required his presence at the scene of the crime," success on a § 1983 claim arising out of the suppression of evidence relevant to his alleged misidentification would "logically imply the invalidity" of his guilty plea. *Poventud*, 2012 WL 727802, at *3. This being so, the court continued, Poventud could survive summary judgment under *Heck* only by showing "that the challenged conviction has been reversed, expunged, invalidated, or called into question." *Id.* Poventud could do none of this, the court concluded, either as to his first conviction or to his guilty plea. Moreover, Poventud's "decision not to pursue in the state court an available remedy by which he could invalidate his [guilty plea] does not relieve him of his obligation to demonstrate its invalidity if he is to avoid the bar established in *Heck*." *Id.* at *4. The district court granted defendants' motion for summary judgment, and this appeal followed.

## DISCUSSION

We review grants of summary judgment *de novo*. *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011).

We conclude that *Heck* does not bar Poventud's § 1983 claims. Under the law of this Circuit, a plaintiff asserting the unconstitutionality of his conviction or incarceration must have access to a federal remedy. Normally that remedy is through a

5

§ 1983 action. If, however, the plaintiff is in custody, *Heck* may apply and require that the plaintiff assert his claim first in a habeas petition. As Poventud is no longer in custody, *Heck* does not bar his claims under § 1983. The district court erred, then, in granting summary judgment against him on the basis of *Heck*. The law of this Circuit in this matter derives from the interplay of two Supreme Court decisions: *Heck v. Humphrey* itself, and the subsequent *Spencer v. Kemna*, 523 U.S. 1 (1998).

Heck *and* Spencer

The petitioner in *Heck* was a state prisoner who sought relief under § 1983. Earlier, Heck had twice sought and failed to secure relief under the federal habeas statute. In upholding the dismissal of Heck's § 1983 claims, the Supreme Court held that when the success of a § 1983 claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," the complaint must be dismissed unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. In other words, the Court continued,

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

6

*Id.* at 487.  This statement tracked the fact pattern in *Heck*, which involved "a state prisoner"—that is, someone still in custody.  In a footnote, and in dicta, the Court suggested, however, that the rule should similarly apply to plaintiffs no longer in custody: "We think the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id.* at 490 n.10.

In a concurrence, Justice Souter, joined by three colleagues, expressed reservations about denying relief to plaintiffs seeking damages under § 1983 for unconstitutional convictions or imprisonment who, because they were no longer imprisoned, could have no relief under habeas.  Extending *Heck*'s favorable termination requirement to plaintiffs not in custody, Justice Souter wrote, would "deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling." *Id.* at 500 (Souter, J., concurring).  A better way to read the majority's opinion is "as saying nothing more than that now, after enactment of the habeas statute and because of it, *prison inmates* seeking § 1983 damages . . . must satisfy a . . . favorable-termination requirement." *Id.* (emphasis added).

Four years after *Heck*, Justice Souter repeated these views in another concurrence.  *Spencer*, 523 U.S. at 18-21 (Souter, J., concurring).  This time he was joined by four Justices.  Three joined Justice Souter's concurrence, which stated (again in dicta, as the case ultimately turned on other grounds) "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination

7

requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21.[1]

And Justice Stevens, in dissent, went out of his way to adhere to Justice Souter's position. *Id.* at 25 n.8 (Stevens, J., dissenting).

*The Law of the Circuit*

Our Court has adopted Justice Souter's dicta in *Spencer*. In *Jenkins v. Haubert*, we reversed the dismissal of a former inmate's § 1983 challenge to the validity of two prison disciplinary hearings. 179 F.3d 19 (2d Cir. 1999). We held that "a § 1983 suit by a prisoner . . . challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of a prisoner's confinement is not barred by *Heck*." *Id.* at 27. To hold otherwise, we noted, "would contravene the pronouncement of five justices that *some federal remedy*—either habeas corpus or § 1983—must be available." *Id.* (emphasis added). In *Leather v. Eyck*, decided the same day as *Jenkins*, we held that *Heck* did not bar the § 1983 suit of an arrestee who was convicted (but fined rather than imprisoned) for driving while impaired. 180 F.3d 420 (2d Cir. 1999). "Because Leather is not and never was in the custody of the State," we explained, "he, like *Jenkins*, has no remedy in habeas corpus. Having escaped the jaws of *Heck*, Leather should therefore be permitted to pursue his § 1983 claim in the district court." *Id.* at 424.

Since *Jenkins* and *Leather*, we have repeatedly affirmed that *Heck*'s favorable-termination requirement applies only to plaintiffs who are in custody, and that all other claimants—those who have no remedy in habeas—may pursue their claims under

---

[1] Between *Heck* and *Spencer*, Justice Ginsburg revised her view of the matter. *See Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring) ("I have come to agree with Justice SOUTER's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's broad reach.") (internal quotation marks omitted).

8

§ 1983. *See McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) ("Over time, [*Heck*'s] implicit exception [to § 1983's otherwise broad coverage] has been carefully circumscribed."); *Huang ex rel. Yu v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001) ("In light of our holding in *Leather,* and in light of . . . the fact that the *Spencer* concurrences and dissent 'revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,' we conclude that Huang's Section 1983 claim must be allowed to proceed.") (quoting *Jenkins*, 179 F.3d at 26); *Green v. Montgomery*, 219 F.3d 52, 60 n.3 (2d Cir. 2000) ("We have held . . . that *Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody). Because it does not appear that Green is presently in state custody, his § 1983 action is not barred by *Heck*." (internal citations omitted)).

The facts in this case differ somewhat from the facts in the cases just cited, but not in a way that is material to the issue before us. After Poventud's original conviction was vacated, but before that vacatur was affirmed on appeal, Poventud pled guilty to a lesser, related offense.[2] This fact, however, does not alter the underlying principle that a

---

[2] Although we think it unnecessary to reach the issue in light of our conclusion that *Heck*'s bar does not apply to a § 1983 plaintiff who is not in custody, even if *Heck* did apply, we are doubtful that success on Poventud's § 1983 suit would "necessarily imply the invalidity," *Heck*, 512 U.S. at 487, of his subsequent guilty plea. The alleged *Brady* violation resulted in a conviction that was later vacated. Because that conviction was vacated—regardless of whether Poventud then pled guilty or was retried—victory in his § 1983 suit would no longer implicate the validity of an outstanding criminal judgment. *See Smith v. Gonzalez*, 222 F.3d 1220, 1222 (10th Cir. 2000); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) (per curiam). Moreover, Poventud's § 1983 suit cannot call into question the validity of his guilty plea, inasmuch as it is undisputed that at the time he pled guilty Poventud was aware of the *Brady* violation on which his present lawsuit is based. *See Smith*, 222 F.3d at 1222 (where conviction was vacated and case remanded due to *Brady* violation, success on plaintiff's § 1983 suit had no relevance to a later criminal trial, since the prosecution could not withhold the same exculpatory evidence at a subsequent trial).

claimant who cannot seek relief under habeas must be able to seek it under § 1983. Poventud's guilty plea may (or may not) supply defendants with a defense that no § 1983 violation occurred. But it does not entitle them to summary judgment under *Heck*.

To repeat, the law of this Circuit makes clear that a plaintiff alleging civil rights violations in connection with his conviction or imprisonment must have access to a federal remedy either under habeas or under § 1983. Because Poventud is not in custody, he has no remedy under habeas. He must be able, therefore, to pursue relief under § 1983.

## CODA

We would end here, but for the apocalyptic tone of the dissent, which requires a brief answer. Among its many flaws are the following.

*First.* Contrary to the dissent's assertion, the majority does not rely principally on *Leather*. It relies at least as much on *Jenkins*. It does so because *Jenkins*, an opinion written by Judge Walker and concurred in by Judge Miner and Judge Sack,[3] most clearly embraced, and most thoroughly recited the history behind, the proposition that we reaffirm today: "that some federal remedy—either habeas corpus or § 1983—must be available." 179 F.3d at 27. To be sure, the panel in *Jenkins* also had other grounds for its decision. *Id.* ("We do not rest our holding solely on our tally of votes on the [Supreme] Court for Justice Souter's view of *Heck*."). And it is true, as the dissent points out, that *Jenkins* dealt with prison discipline rather than a conviction. But that, for purposes of the case before us, is a distinction without a difference. The court in *Jenkins* did not

_____

[3] We mention the names of individual judges only because the dissent goes out of its way to do so.

10

limit its endorsement of Justice Souter's position to the facts before it. It stated that endorsement as a general proposition and, having done so, made it one basis for its holding.

It is significant, moreover, that *Jenkins* and *Leather* (which dealt with an actual criminal conviction, and not only with conditions of confinement) came down the same day. As is well known, the normal practice, when two panels are dealing with closely related issues at the same time, is for the panels to communicate with each other to ensure, if at all possible, that the opinions are consistent. One can therefore assume that, together, *Jenkins* and *Leather* reflected the law of the Circuit at the time, and that the law was, as *Jenkins* stated it, "that some federal remedy—either habeas corpus or § 1983—must be available." 179 F.3d at 27. Significantly, within a year, this view was affirmed again in *Green v. Montgomery*, which stated that "*Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody)." 219 F.3d at 60 n.3 (Kearse, J.; Calabresi, J.; Katzmann, J.). Less than a year after *Green*, this position was stated yet again in *Huang v. Johnson*. 251 F.3d at 75 ("In light of our holding in *Leather,* and in light of both the *Spencer* majority's dictum and the fact that the *Spencer* concurrences and dissent 'revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be,' *Jenkins,* 179 F.3d at 26, we conclude that Huang's Section 1983 claim must be allowed to proceed.") (Feinberg, J.; Winter, J.; Cabranes, J.).

11

Within a period of two years, then, four unanimous panels of the Second Circuit, including a majority of active judges sitting throughout that time,[4] affirmed the position of the Circuit that *Heck*'s bar on § 1983 relief applies only when federal relief can be sought under habeas. These panels so ruled because, as the *Jenkins* Court noted, to do otherwise "would contravene the pronouncement of five justices that some federal remedy—either habeas corpus or § 1983—must be available." 179 F.3d at 27. And this is the principle the majority follows today. Indeed, this position is so clearly the current law of the Circuit that the majority considered this case a candidate for disposition by summary order on this ground only, rather than on the alternate ground discussed below.

*Second.* The dissent suggests, nonetheless, that *Jenkins*, *Leather*, *Green*, and *Huang*—and the judges who participated in those three decisions—flew in the face of a Supreme Court holding that remained the law despite subsequent Supreme Court dicta to the contrary. If that were true, these opinions would have been wrong,[5] and one would have expected that fact to have been raised at the time. The Supreme Court in *Heck* decided a case in which habeas *was* available. In dicta, in a footnote, which was

---

[4] That is, seven active judges (Judges Kearse, Walker, Calabresi, Cabranes, Straub, Sack, and Katzmann) out of thirteen. Judge Winter, who served as Chief Judge when *Jenkins*, *Leather*, and *Green* were decided, had assumed senior status before writing the panel opinion in *Huang*.

[5] This was not always necessarily so, *see W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (affirming a district court decision that parted with clear Supreme Court precedent in the belief that the Supreme Court would now decide the matter differently), but it is so now, *see Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

completely unnecessary to the decision in *Heck*, there is language suggesting that the holding might well be extended to a future case where habeas was not available. *Heck*, 512 U.S. at 490 n.10. It was to distance himself from this dicta that Justice Souter wrote his concurrence. And, when one of the Justices who had joined the *Heck* footnote changed her mind, *see Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring), it became clear that the *Heck* dicta no longer commanded the support of a majority of Supreme Court Justices.

In such circumstances—i.e., where there is no Supreme Court holding in one direction, and there are powerful statements by a majority of the Justices in an opposite direction—it is perfectly appropriate (though not required) for a lower court to embrace the position adopted (albeit in dicta) by that majority. This is precisely what the panels in *Jenkins*, *Leather*, *Green*, and *Huang* did.

*Third*. The dissent claims that in doing this, the *Jenkins*, *Leather*, *Green*, and *Huang* Courts improperly altered the law of the Circuit without going *in banc*. There is no need, however, to discuss today what the Circuit law was before the Supreme Court decided *Heck* and *Spencer*. For, even assuming, very much, arguendo that the dissenter is correct as to our Circuit's pre-*Heck* law,[6] it is readily accepted that a panel of this

---

[6] We note that the two Second Circuit decisions—*Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992) and *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980)—that the dissent adduces for the proposition that our pre-*Heck* cases did not turn "on whether the plaintiff was incarcerated or at liberty when suit was filed," both involved § 1983 claims sounding in malicious prosecution. Of course these cases didn't turn on whether the plaintiff was in or out of custody. They turned on the fact that favorable termination is an element of malicious prosecution. These decisions did not anticipate *Heck*; they simply applied an old common law rule from which the *Heck* majority drew a controversial analogy. Whatever the vices of the *Jenkins-Leather-Green-Huang* line of cases, we do not think that even so hardened a foe as the dissenter can accuse them of straying from the notion that a claim must be dismissed if one of its elements—i.e., favorable termination in malicious prosecution suits—is missing. The dissent also cites two cases—

13

Court may depart from a prior decision when that earlier decision's "rationale is overruled, implicitly or expressly, by the Supreme Court." *In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000) (per curiam) (internal quotation marks omitted). As far as we can determine, our Court has not clearly decided whether such undermining must happen in a holding by the Supreme Court, or whether clear dicta also suffices.[7] In any event, had anyone cared to disagree with *Jenkins* or *Leather* or *Green* or *Huang* on the ground that they deviated from prior holdings, the time to say so was when those four cases were decided. Accordingly, one would have expected a request for *in banc* reconsideration at that time. There was no such request, which comes as no surprise given the unanimity of support in those cases for the position we reaffirm today. The dissenter obviously disagrees, as is his right, with the position our Court then took. But, given those holdings, we would think it preferable for the dissent to state that disagreement by concurring in today's result and expressing distaste for the settled law that requires such a concurrence.

*Fourth.* Quite apart from whether the absence of habeas, by itself, means that a § 1983 action may lie, the dissent is incorrect in its statement that *this* § 1983 action

---

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999), and *Channer v. Mitchell*, 43 F.3d 786 (2d Cir. 1994) (per curiam)—that were not malicious prosecution cases, but were cases in which the petitioner was still incarcerated and could bring habeas. The bar on § 1983 suits in those circumstances, of course, continues to apply.

[7] In one case, in which the Supreme Court had suggested a certain direction in dicta but then explicitly left the question open, we concluded that "the Supreme Court's dicta do not outweigh prior circuit authority." *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 70 (2d Cir. 2004), *rev'd on other grounds by KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005). As a general matter, however, "[w]e have also observed that we may depart from a prior decision when it merely 'has been called into question by an intervening United States Supreme Court decision.'" *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 101 n.12 (2d Cir. 2005) (quoting *Meacham*, 381 F.3d at 69).

calls into question Poventud's second conviction. It does nothing of the sort. It asserts that his constitutional rights were violated by the state through a *Brady* violation. Under *Heck*, this could not have been brought up prior to the quashing of his *first* conviction because a finding of a *Brady* violation would undercut that conviction. But once *that* conviction was quashed, the *Brady* violation—if one were established, and if it injured Poventud—would constitute an independent infringement of Poventud's constitutional rights, regardless of his *subsequent* conviction.

To give a dramatic example: suppose a defendant is tortured viciously, confesses, and is convicted on the basis of that confession. Under *Heck*, he cannot, while in jail on that conviction, bring a § 1983 action for being tortured because that would undercut the conviction. But once his conviction is quashed (through habeas or in other ways), he is free to assert that he was tortured and seek a § 1983 remedy. Does the dissent really believe that this becomes less true if that defendant later freely confesses, even to the same crime? At that point, the claim for damages for torture in no way undercuts the second, and only existing, conviction and hence is in no way barred by *Heck*.

At core, this is what Poventud claims today. He seeks damages for the harm caused by a *Brady* violation in connection with his first (invalidated) conviction; he makes no claims at all with respect to his second (outstanding) conviction. *See* Appellant's Br. 32 ("Seeking damages only for punishment he suffered in excess of the one-year imprisonment he accepted as part of his plea, the lawsuit, if successful, would not be inconsistent with that plea."). As noted earlier, whether there was such a violation, and whether there were such damages, will be determined in a § 1983 trial. But whatever the result of that trial, Poventud's subsequent guilty plea is not undermined by his § 1983 action.

Finally, the dissent makes the extraordinary argument that habeas might be available to Poventud because his "inability to bring a § 1983 action alone may constitute a collateral consequence sufficient to overcome a mootness challenge and support a . . . post-release habeas petition." This argument, which has not been made by *anyone* in this case, is circular. It posits a result—the unavailability of § 1983 relief—and on the basis of that result creates the premise for that result. It is, in short, absolutely Ptolemaic in the uselessness of its epicycles.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND the case to the district court for further proceedings consistent with this opinion.

DENNIS JACOBS, <u>Chief Judge</u>, dissenting:

Marcos Poventud's 1998 New York State conviction for holding up a livery-car driver was vacated by the courts of New York on a <u>Brady</u> violation, and he was released from custody in 2005 after pleading guilty--on lesser charges--to the same hold-up at the same place and time, on the same date. He has sued prosecutors and police, under 42 U.S.C. § 1983, for achieving his conviction for a crime that he committed--as he has conceded under oath and in open court. The United States District Court for the Southern District of New York (Batts, <u>J.</u>) dismissed the complaint on the ground that, under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), he cannot sue under § 1983 unless the conviction has been overturned. I would affirm. The only errors in this case have been introduced on appeal.

The majority holds that <u>Heck</u> is no bar to a civil suit once the sentence has been served, regardless of whether the conviction was overturned. The majority relies on a concurrence in <u>Heck</u> and dicta in other Supreme Court cases, and on Second Circuit case law that has accrued along these lines.

I respectfully dissent. My objection goes deep, to the root of the error in Second Circuit cases that prefer dicta

in Heck to its holding--a holding that confirmed longstanding Second Circuit law.  As the majority opinion states, concurrences in Heck and Spencer v. Kemna, 523 U.S. 1 (1998) posited the idea that Heck might not bar a civil claim for damages notwithstanding that the claim necessarily called into question an undisturbed criminal conviction, if habeas is unavailable to challenge the conviction under the federal Constitution.  Spencer precipitated a Circuit split, with some Circuits recognizing a few narrow exceptions to Heck, and others countenancing no exception at all.  The majority opinion follows and extends a line of cases in this Circuit that cannot be located on either side of that Circuit split.  The majority opinion holds that Heck is a bar to suit under § 1983 only until the convict is released from custody (because habeas is no longer available to a person at liberty); and this stretch is widened to discount a post-vacatur plea of guilt to lesser charges on the same crime.

The majority opinion thus places at risk of constitutional litigation--for decades--prosecutors and police who obtained convictions of persons who indisputably or even admittedly committed the crimes charged.

I would affirm the district court's judgment.  The unconstitutional conduct for which Poventud seeks damages is

2

the failure to disclose the identification of another person as having committed the crime.  The premise of that claim-- that Poventud was denied the opportunity to effectively challenge his identification as the perpetrator--necessarily implies the invalidity of the unchallenged, subsisting conviction that was entered on Poventud's plea of guilty to that crime.  Heck therefore bars Poventud from asserting his § 1983 claim.

I

In 1998, a jury convicted Poventud of attempted murder in the second degree, attempted robbery in the first degree, and criminal possession of a weapon in the first degree, in connection with the armed robbery and shooting of Younis Duopo as he was driving a livery cab.  The time and place were: approximately 8:40 p.m. on March 6, 1997, between Oliver Place and Marion Avenue in the Bronx.  The conviction and the 10-to-20 year sentence were affirmed on appeal.  See People v. Poventud, 300 A.D.2d 223, 224 (1st Dep't 2002).

In 2005, the New York Supreme Court, Bronx County, vacated the conviction and ordered a re-trial on the ground that the prosecution had withheld potentially exculpatory evidence.  This ruling was highly solicitous of Poventud's rights; in fact, the evidence withheld might as easily be viewed as *inculpatory*.

3

After the hold-up, photo ID of Poventud's brother Francisco was found in a wallet in Duopo's vehicle. When shown the photograph of Francisco, Duopo opined that it "looks like" the perpetrator, or "looks a lot like him." A 98. (The majority calls this a positive identification.[1] See Maj. Op. at 3.) After it was ascertained that Francisco was and had been in prison, Duopo positively identified Marcos Poventud, as he later did in a line-up and for a third time in the courtroom. A 98, 114. The state court ordered a re-trial on the ground that Brady was violated by the State's failure to disclose Duopo's observation that Francisco's photo resembled the perpetrator. See People v. Poventud, 802 N.Y.S.2d 605, 608 (Brx. Cnty. 2005).

Poventud claims that he looks nothing like his own brother (which would certainly make Duopo's observation uncanny), and that it is just one of those coincidences that his jailed brother's photo ID was left at the scene of the crime.

Poventud had the opportunity to test those explanations before a jury on retrial. Instead, Poventud pled guilty to attempted robbery in the third degree. At his hearing, he admitted to holding up Duopo as he was driving a livery cab

---

[1] The Bronx District Attorney's Office considered this statement a "tentative identification," A 59, that tended to inculpate Poventud, A 75.

4

at: approximately 8:40 p.m. on March 6, 1997, between Oliver Place and Marion Avenue in the Bronx. The plea colloquy thus resolved the issue: Duopo's identification of Poventud was sound. A 93. Poventud was re-sentenced to one year in prison and, because he had already served nine years, was released.

Upon release from prison, Poventud filed a motion challenging the voluntariness of his plea, but later withdrew the motion. He then filed this damages action under 42 U.S.C. § 1983 alleging that the prosecution's <u>Brady</u> violation deprived him of a fair trial. See <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Judge Batts ruled that Poventud's claims were barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and dismissed the case. See <u>Poventud v. City of N.Y.</u>, No. 07 Civ. 3998 (DAB), 2012 WL 727802, at *3 (S.D.N.Y. Mar. 6, 2012).

**II**

Even before <u>Heck</u>, our Circuit (like many others) barred § 1983 claims that necessarily implied the invalidity of outstanding convictions--and did so regardless of whether the plaintiff remained in jail. The seminal case was <u>Cameron v. Fogarty</u>, 806 F.2d 380 (2d Cir. 1986), which explained why a plaintiff's outstanding conviction (for

5

possession of stolen property) barred his damages action for false arrest under § 1983: "the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff *can under no circumstances recover* if he was convicted of the offense for which he was arrested." Id. at 388 (emphasis added). Cameron extended that principle to § 1983 actions, observing: "The right to bring suit under § 1983 is designed both to allow an injured person to obtain compensation for the loss of his civil rights and to deter public officials from further violation of such rights." 806 F.2d at 388. Yet, neither interest "is more than minimally implicated where the [claimant] was convicted." Id.; see also Singleton v. City of N.Y., 632 F.2d 185, 195 (2d Cir. 1980) (dismissing malicious prosecution claim brought under § 1983 on the same grounds).

The rule was given broad application. In Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992), we explained that a § 1983 plaintiff who seeks to challenge his conviction "must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his Section 1983 claim." Id. at 853. We later held that this bar applied to Brady violations, Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999), as well as related claims under §§ 1981, 1985, and

6

1986, id. at 51-52.[2]  And, as discussed infra at 29-30, several courts in this Circuit have held (and we have affirmed) that the bar applies even if the subsequent guilty plea is to a lesser charge.  See McNeill v. People of City & State, No. 06-CV-4843(NGG), 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006), summarily aff'd, 242 F. App'x 777 (2d Cir. 2007); Papeskov v. Brown, No. 97 Civ. 5351(SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) (Sotomayor, J.), summarily aff'd, 173 F.3d 845 (2d Cir. 1999); see also Stein v. Cnty. of Westchester, N.Y., 410 F. Supp. 2d 175, 179 (S.D.N.Y. 2006).

None of these cases turned on whether the plaintiff was incarcerated or at liberty when suit was filed, or suggested that this consideration had any weight or bearing.  In most of these cases, the plaintiff was *not* in custody.  See, e.g., Roesch, 980 F.2d at 850; Singleton, 632 F.2d at 195;

---

[2] Heck confirmed that this bar is not limited to false arrest, false imprisonment, and malicious prosecution claims: the plaintiff alleged, inter alia, that prosecutors "'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence[.]'" 512 U.S. at 479 (citation omitted); see also Channer v. Mitchell, 43 F.3d 786, 787 (2d Cir. 1994) (per curiam); Rosato v. N.Y. Cnty. District Attorney's Office, No. 09 Civ. 3742, 2009 WL 4790849, at *3-4 (S.D.N.Y. Dec. 14, 2009); Davison v. Reyes, 11-CV-167 ENV LB, 2012 WL 948591, at *3 (E.D.N.Y. Mar. 20, 2012).  The majority opinion here mistakenly suggests that the bar is so limited, Maj. Op. at 13 n.6, but prudently concludes that there is "no need" to consider this case law in any depth, id. at 13.

7

*McNeill*, 2006 WL 3050867, at *2-3; *Papeskov*, 1998 WL 299892, at *5; *Stein*, 410 F. Supp. 2d at 179.

These decisions consistently and methodically applied the rule that plaintiffs may not use § 1983 to call into question an outstanding criminal conviction, a rule that avoided "the prospect of harassment, waste and endless litigation, contrary to principles of federalism." *Singleton v. City of N.Y.*, 632 F.2d 185, 195 (2d Cir. 1980).

The majority relies on *Leather v. Ten Eyck*, 180 F.3d 420 (2d Cir. 1999) (Calabresi, *J.*) and cases that cited or followed it;[3] but these cases could not have undone the law of this Court without review *in banc*.[4]  See *United States v.*

---

[3] Among other cases, the majority cites *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999) (Walker, *J.*), which was decided the same day as *Leather*.  But, as discussed *infra* at 14, *Jenkins* involved a challenge to a prison disciplinary sanction (not the plaintiff's conviction itself), which plainly did not trigger the *Heck* bar.  See *id.* at 27 ("[Nothing in Supreme Court precedent requires that the *Heck* rule be applied to a challenge by a prisoner to a term of disciplinary segregation[.]").

[4] The majority opinion wonders aloud why such cases were not challenged *in banc*.  See Maj. Op. at 13-14.  First, there is little point in mobilizing the Court *in banc* to excise dicta.  Second, this Court is notoriously reluctant to sit *in banc*.  See *Ricci v. DeStefano*, 530 F.3d 88, 93 (2d Cir. 2008) (Jacobs, *C.J.*, dissenting from denial of rehearing *in banc*) (arguing that "to rely on [Circuit] tradition to deny rehearing *in banc* starts to look very much like abuse of discretion"); *see* *id.* at 89 (Calabresi, *J.*, concurring in denial of rehearing *in banc*) (concluding that *in banc* review is unnecessary even when "[d]ifficult issues" are presented).

8

*King*, 276 F.3d 109, 112 (2d Cir. 2002).  In any event, our Circuit law, as it was settled before *Leather*, was validated and confirmed by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994).  While Heck was serving a fifteen-year sentence for voluntary manslaughter and his direct appeal was still pending, he brought a § 1983 action alleging that prosecutors and police officers had destroyed exculpatory evidence.  *Id.* at 478-79.  The Supreme Court affirmed the dismissal of the claim because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and because success on the plaintiff's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence[.]"  *Id.* at 486-87.  To recover damages for allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"  *Id.*

This requirement is animated by the values of finality and consistency, and "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."  *Id.* at 484 (citation and

9

quotation marks omitted).  Heck, which strengthened and validated our existing precedent, remains the rule until--if ever--the Supreme Court alters its holding.

**III**

A Circuit split has opened as to whether some exceptions to Heck may be permitted on the basis of self-described dicta signed by five Justices (three of whom are no longer on the Court).  The majority opinion patches together the various concurrences and passages of dicta, identifying the Justices (some active, some retired) who wrote or signed the opinions.  See Maj. Op. at 7-8 (discussing Spencer v. Kemna, 523 U.S. 1, 18-21 (1998) (Souter, J., concurring)).  In a nutshell, these Justices posited that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be *impossible as a matter of law* for him to satisfy."  Spencer, 523 U.S. at 21 (Souter, J., concurring) (emphasis added).  While some Circuits carve out a narrow exception to Heck's holding based on the Spencer concurrences, the majority in our case adopts a view that would have no basis even in Supreme Court dicta.

10

Several courts of appeals have concluded (as I do) that the Spencer concurrences cannot override Heck's binding precedent. See, e.g., Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007); Gilles v. Davis, 427 F.3d 197, 209-10 (3d Cir. 2005); Randell v. Johnson, 227 F.3d 300, 301 (5th Cir. 2000); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998).

These opinions heed the Supreme Court's admonition that, even if binding precedent "appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this [Supreme] Court the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, 237 (1997) (citations and internal quotation marks omitted). We adhere to that rule: "It is not within our purview to anticipate whether the Supreme Court may one day overrule its existing precedent." United States v. Santiago, 268 F.3d 151, 155 n.6 (2d Cir. 2001).

Other Circuits have nevertheless held that Spencer's dicta does allow for unusual and compelling circumstances in which Heck's holding does not absolutely foreclose a claim. See, e.g., Burd v. Sessler, 702 F.3d 429, 435-36 (7th Cir. 2012); Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir. 2010); Wilson v. Johnson, 535 F.3d 262, 267–68 (4th Cir. 2008); Powers v. Hamilton Cnty. Public Defender Comm'n, 501

11

F.3d 592, 603 (6th Cir. 2007); Guerrero v. Gates, 442 F.3d 697, 704 (9th Cir. 2006); Harden v. Pataki, 320 F.3d 1289, 1298 (11th Cir. 2003).

But even the courts that recognize certain narrow exceptions to Heck emphatically reject the idea that the rule in Heck no longer applies once a convict exits the prison gates. The Seventh Circuit, for instance, recently dismissed a claim by a released convict who argued that § 1983 must be made available if habeas relief is not. See Burd, 702 F.3d at 435-36 (holding that "Heck applies where a § 1983 plaintiff could have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing"). Likewise the Ninth Circuit: "The fact that [a criminal defendant] is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift Heck's bar." Guerrero, 442 F.3d at 704.[5] And the Sixth Circuit: "It seems unlikely that Justice Souter intended to carve out a broad Heck exception for all former prisoners." Powers, 501 F.3d at 603.

---

[5] The Ninth Circuit qualified its endorsement of the Spencer dicta further: the exception posited by Justice Souter "'affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters,' not challenges to an underlying conviction such as those Guerrero brought." Guerrero, 442 F.3d at 705 (quoting Nonnette v. Small, 316 F.3d 872, 878 n.7 (9th Cir. 2002)).

12

Our Court has gone its own way, without adhering to either side of this broad Circuit split.  This Circuit first invoked the Spencer dicta in Leather v. Ten Eyck, 180 F.3d 420 (2d Cir. 1999) (Calabresi, J.), to allow an individual fined for drunk driving to seek damages in federal court even though he chose to forgo an appeal in state court.  A year later, the Spencer dicta was adopted as a holding, in a broadened and generalized form, in Green v. Montgomery, 219 F.3d 52 (2d Cir. 2000) (Calabresi, J.): "Heck acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody)."  Id. at 60 n.3.  The majority's present opinion builds on this error.

The final segment of the majority opinion cites several Second Circuit opinions to argue for a spurious consensus.  Two of those cases allowed § 1983 claims to proceed when the plaintiff challenged conditions of confinement rather than the fact or duration of confinement.  See Jenkins v. Haubert, 179 F.3d 19, 25 (2d Cir. 1999) (Walker, J.); Sims v. Artuz, 230 F.3d 14, 24 (2d Cir. 2000) (Kearse, J.).  These uncontroversial decisions are straightforward applications of Supreme Court precedent.  See Preiser v. Rodriguez, 411 U.S. 475, 490 (1973).  Another case cited by the majority, Huang ex rel. Yu v. Johnson, 251 F.3d 65 (2d

13

Cir. 2001) (Winter, J.), is likewise inapposite. See id. at 67 (considering whether New York law required court to credit a juvenile for time spent in a different institution on an unrelated charge); see also Huang ex rel. Yu v. Johnson, 274 F.3d 682, 682-83 (2d Cir. 2001) (per curiam) (dismissing case after New York Court of Appeals held that government agency properly calculated juvenile's sentence). The majority devotes considerable space to these dissimilar cases, see Maj Op. at 8-9, 10-14, and counts on fingers the judges involved in their dispositions, see id. at 12 n.4. It is true that these opinions cited the Spencer dicta with approval, expressing support for a very narrow exception that the majority opinion here expands immoderately and adopts as a holding. But I decline to argue over dicta distilled from dicta--especially when the Supreme Court, ten sister Circuits, and numerous cases in this Circuit counsel otherwise. See supra at 5-8, 11-12.

**IV**

The majority's holding--that Heck is inapplicable because Poventud was no longer in custody when he filed suit--relies (as I have shown) on Justice Souter's dicta in Spencer v. Kemna, 523 U.S. 1, 3 (1998), which the majority opinion presumes to elevate as the "better" rule. See Maj.

14

Op. at 7. (The Justices are free to choose the "better" rule--or a worse one, for that matter--but we are not.) In Heck, the Court made its choice perfectly clear.

Heck involved a challenge by a plaintiff in custody, but the opinion left no doubt that its holding applied regardless of whether the plaintiff was in custody or at liberty:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87. The majority here presumptuously concludes that Heck's holding is expressed with careless overbreadth, and is not intended to apply to *all* § 1983 actions including those filed by released convicts.[6]

---

[6] Of course, the Supreme Court is not obligated to adopt the narrowest holding possible. See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 130 S. Ct. 876, 919, 175 L. Ed. 2d 753 (2010) (Roberts, C.J., concurring) ("It should go without saying . . . that we cannot embrace a narrow ground of decision simply because it is narrow; it must also be right."); In re McDonald, 205 F.3d 606, 612 (3d Cir. 2000) ("[A] holding . . . extends beyond a statement of who won or lost a case. A court can choose among different holdings that offer broader or narrower ways of resolving a

Heck's reasoning confirms that its holding means what it says.  Favorable termination is an absolute prerequisite to § 1983 actions that seek damages arising from unlawful incarceration: "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action."  Id. at 489.  Since no cause of action exists under § 1983 so long as the plaintiff stands convicted of the crime, it cannot matter whether a plaintiff whose conviction subsists is in custody or at liberty, or has (or could have) pursued habeas relief.

The incompatibility between Heck's holding and Justice Souter's dicta is acknowledged by Justice Souter's expression of his views in terms of disagreement.[7]

---

dispute.").  Lower courts therefore may not escape the reach of a Supreme Court opinion by limiting it to its facts.  See generally Michael C. Dorf, Dicta and Article III, 142 U. Pa. L. Rev. 1997, 2040 (1994) (explaining that courts should not cast aside as "mere dictum" an earlier ruling, regardless of "the relative merits of a broad or narrow decisional principle in the initial case"); Michael Abramowicz & Maxwell Stearns, Defining Dicta, 57 Stan. L. Rev. 953, 986 (2005) ("[B]readth does not make statements dicta.").

[7] The Justice observed that although the case arose at the intersection of § 1983 and the federal habeas statute, the majority nonetheless "appear[ed] to take the position that the statutes were never on a collision course in the first place."  Id. at 492 (Souter, J., concurring).  As Justice Souter explained, the Court reached this conclusion "because, like the common-law tort of malicious prosecution, § 1983 requires (and, presumably, has always required) plaintiffs seeking damages for unconstitutional conviction or confinement to show the favorable termination of the underlying proceeding."  Id.  Justice Souter then said why,

16

Reciprocally, the majority opinion in <u>Heck</u> rejected Justice Souter's bid to narrow its holding:

> Justice Souter also adopts the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an outstanding criminal conviction, but thinks it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges. *We think the principle barring collateral attacks-- a longstanding and deeply rooted feature of both the common law and our own jurisprudence--is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.*

<u>Id.</u> at 490 n.10 (emphasis added) (internal citation omitted).

The majority in our case deprecates this footnote as dictum, Maj. Op. at 7 (though it is unclear to me why this would make it less compelling to the majority, whose entire argument here rests on nothing else). I disagree: the passage does not address some ancillary issue; it responds directly to Justice Souter's criticism, emphasizing that the scope and rationale of the holding are broad enough to be unaffected by whether the plaintiff is in jail or not. "'A dictum . . . is an assertion in a court's opinion of a proposition of law [that] does not explain why the court's judgment goes in favor of the winner.'" <u>Barclays Capital</u>

---

in his view, this approach was flawed. <u>Id.</u>

*Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 899 (2d Cir. 2011) (quoting Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1256 (2006)). As illustrated above, <u>Heck</u> made clear that the rule did not impose an exhaustion requirement and did not turn on the availability of habeas relief or whether the plaintiff is still in jail. <u>Heck</u>, 512 U.S. at 489, 490 n.10. Just as a court may state (in binding terms) what the rule is, it may also state (in terms equally binding) what the rule is *not*.

In any event, footnote ten only reinforces what <u>Heck</u>'s holding makes plain: a claim for damages that necessarily implies the invalidity of an outstanding conviction is not cognizable under § 1983. <u>Heck</u>, 512 U.S. at 486-87.

                              *   *   *

The concurrences in <u>Heck</u> and <u>Spencer</u> could not narrow or redefine or otherwise alter the Supreme Court's holding. Unlike plurality opinions, in which "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds," <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977), a majority opinion dictates the precise contours of the Court's holding. <u>See</u> Abramowicz & Stearns, <u>supra</u> n.6, at 1059. "Critically, this is so even if a Justice concurring in the

18

judgment would have preferred instead to resolve the case on a narrower ground[.]" <u>Id.</u> Likewise, the majority here concedes, as it must, that Supreme Court dicta does not outweigh Circuit precedent; only an intervening Supreme Court *decision* will have that effect. <u>See</u> Maj. Op. at 14 n.7 (citing <u>Meacham v. Knolls Atomic Power Lab.</u>, 381 F.3d 56, 70 (2d Cir. 2004) and <u>Consol. Edison Co. of N.Y., Inc. v. UDGI Utils., Inc.</u>, 423 F.3d 90, 101 n.12 (2d Cir. 2005)).

**V**

The majority opinion runs counter to the several values that animate <u>Heck</u> (and our pre-<u>Heck</u> jurisprudence).

The Supreme Court has "long expressed . . . concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." <u>Heck</u>, 512 U.S. at 484-85. The majority opinion posits a rule that makes the opportunity for inconsistent collateral attack eternal.

A § 1983 action that necessarily impugns an outstanding conviction subverts the "longstanding and deeply rooted" principle barring collateral attacks, <u>id.</u> at 490 n.10, whether or not the challenge is issued from prison. An exception for released inmates would violate "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding

19

criminal judgments." Id. at 486. It is an irrelevant "fortuity that a convicted criminal is no longer incarcerated." Id. at 490 n.10.

The majority's approach here also undermines federalism. "Federal post-trial intervention, in a fashion designed to annul the results of a state trial, . . . deprives the States of a function which quite legitimately is left to them[.]" Huffman v. Pursue, Ltd., 420 U.S. 592, 609 (1975). To allow collateral attacks on criminal convictions in federal court upon the convict's release from state prison would "fly in the teeth of Heck," Fiqueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998), and would impair the fundamental principles that compelled its holding.

The majority opinion has the single virtue of assuring that there is absolutely no residual unavailability of federal remedies to any state criminal defendant. However, there is no support in the Constitution or in § 1983 for the principle that "every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court." Allen v. McCurry, 449 U.S. 90, 103 (1980). A § 1983 action need not "always and everywhere be available." Spencer, 523 U.S. at 17.

Section 1983 aside, a convicted criminal is not without recourse. Upon release from custody, a convict may seek

20

habeas relief if the State continues to impose significant restraints on his liberty, such as probation or parole. See Jones v. Cunningham, 371 U.S. 236, 242 (1963). Even absent such a showing, courts are now willing to presume that a criminal conviction has continuing collateral consequences that could support a post-release habeas petition. See Spencer v. Kemna, 523 U.S. 1, 8 (1998); see also Nonnette v. Small, 316 F.3d 872, 878 n.7 (9th Cir. 2002) ("[T]he status of prisoners challenging their underlying convictions or sentences does not change upon release, because they continue to be able to petition for a writ of habeas corpus."). The inability to bring a § 1983 action alone may constitute a collateral consequence sufficient to overcome a mootness challenge and support a convict's post-release habeas petition.[8]  See Leonard v. Nix, 55 F.3d 370, 373 (8th

---

[8] The majority satirizes this statement as circular (because I posit the unavailability of § 1983 as a possible basis for seeking habeas relief, the existence of which, in the majority's view, would render § 1983 unavailable). See Maj. Op. at 15-16. But this text paragraph of my opinion merely lists remedies (aside from § 1983) that remain available to convicted criminals; it does not form a basis for concluding that Poventud's § 1983 claim must be dismissed. Here, § 1983 is unavailable because the claim would undermine an outstanding conviction--without regard to whether habeas relief is also available. See Heck, 512 U.S. at 503 (Souter, J., concurring) (criticizing the majority for imposing a favorable-termination requirement rather than "constru[ing] § 1983 in light of the habeas statute and its explicit policy of exhaustion"); Channer v. Mitchell, 43 F.3d 786, 787-88 (2d Cir. 1994) (per curiam).
The majority's error illuminates a more significant

21

Cir. 1995) ("Leonard's section 1983 action gives this case life, for if Leonard wins this habeas action, the state becomes vulnerable to his section 1983 damages claim. Leonard's petition is therefore not moot."); see also O'Neill v. City of Phila., 32 F.3d 785, 788 n.7 (3d Cir. 1994); Sule v. Warden, ADX Florence Colo., 133 F.3d 933, at *2 (10th Cir. Jan. 13, 1998) (unpublished). And, of course, *all* criminal defendants may pursue a direct appeal--whether or not they remain in jail--through the state court system and on to the Supreme Court of the United States. Supreme Court review is itself "sufficient to preserve the role of the federal courts as the ultimate guardians of federally guaranteed rights." Waste Mgmt. of Wis., Inc. v. Fokakis, 614 F.2d 138, 141 (7th Cir. 1980). Under any circumstance, then, the convicted criminal has post-release remedies available in both federal and state court.[9]

defect that pervades its entire analysis: a willingness to view this case through the eyes of a concurring opinion rather than the opinion of the Court.

[9] Additionally, a convict may seek a writ of error coram nobis from the court that rendered judgment against him--here, the New York Supreme Court. See United States v. Morgan, 346 U.S. 502, 507 n.9 (1954); Finkelstein v. Spitzer, 455 F.3d 131, 133-34 (2d Cir. 2006). If successful, he may then pursue damages under § 1983.

To the extent that the majority relies on an implicit notion that New York courts are inadequate protectors of Poventud's federal rights, I disagree for several reasons. [1] It was the New York Supreme Court that overturned Poventud's original conviction on Brady grounds, a ruling

The majority opinion falls victim to the judicial fallacy of viewing the ramifications of any legal principle through the single prism of the plaintiff's interests. But it should be obvious that important interests are dis-served when every prosecutor and every police officer remains subject to suit for acts alleged to have happened years and decades in the past, after memory fades, witnesses move on, and evidence is discarded. The worse the crime for which the plaintiff was convicted, the longer the sentence, and thus the worse the peril for public officials, who may years later no longer be indemnified or defended.

The majority opinion likewise disadvantages the class of persons who achieve vacatur of their convictions. Allowing defendants to seek damages under § 1983 after pleading guilty would create an incentive for prosecutors to retry the case rather than offer a plea based on time served. Cf. Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir.

---

that was quite solicitous given that the evidence withheld was arguably inculpatory (or, at best, a wash). [2] It would be unwise "to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities." Huffman v. Pursue, Ltd., 420 U.S. 592, 611 (1975). [3] Plaintiffs may be able to file a § 1983 action seeking an *injunction* against any individuals who are impeding their efforts to appeal a conviction. See Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999) (dismissing § 1983 claim for damages under Heck because injunction was the appropriate remedy where plaintiff alleged that various state officials were "illegally blocking his access to state postconviction remedies").

1999) (observing that if the court were to recognize a § 1983 action following a plea of nolo contendere, it would make prosecutors, faced with the prospect of continuing litigation and a possible damages award, much less likely to offer such a deal).  It would also "undermine the finality of plea bargains and jeopardize society's interest in a system of compromise resolution of criminal cases."  <u>Id.</u> Finality is a vital principle, not a bureaucratic means of closing the judicial books.[10]  The majority opinion offers no appreciable counterweight to these rooted values and vital interests.

**VI**

Even if we were free to prefer <u>Spencer</u>'s dicta to the holding of <u>Heck</u> (not to mention Second Circuit precedent), the narrow exception articulated by Justice Souter would not be applicable here.  As discussed above, the motivating concern in the <u>Spencer</u> dicta was that circumstances beyond the control of a criminal defendant might deprive him of the

---

[10] <u>See</u> <u>Custis v. United States</u>, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice.") (quoting <u>United States v. Addonizio</u>, 442 U.S. 178, 184, n.11 (1979)).  Moreover, "when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.'"  <u>Id.</u> (quoting <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (1979)).

opportunity to challenge a federal constitutional violation in federal court. Poventud is not such a person.

Poventud challenged his first conviction in state court and won--making it unnecessary for him to seek federal habeas relief. At that point, Poventud had the option of fighting at a new untainted trial or pleading guilty to the same crime on reduced charges and accepting a reduced sentence. He chose to plead. Poventud then had the option of filing a motion to challenge the voluntariness of his plea. He withdrew it.[11] It was therefore by no means "impossible as a matter of law" for Poventud to challenge his conviction and thereby satisfy Heck's favorable termination requirement, Spencer v. Kemna, 523 U.S. 1, 21 (1998) (Souter, J., concurring); he simply decided not to.

A guilty plea "represents a break in the chain of events which has preceded it in the criminal process,"

---

[11] Poventud's allegations of "gruesome and repetitive physical and sexual abuse" in prison are cited by the majority, presumably to imply that the government's plea offer, resulting in immediate release, was one that could not be refused. Maj. Op. at 4. But it is naive to think that any plea is free from powerful pressures and influences, and that it is only the exceptional defendant who has reason to fear prison. Moreover, this argument is a red herring; Poventud withdrew his § 440 motion challenging the voluntariness of his guilty plea. However tantalizing the government's offer, Poventud swore in open court that he participated in the armed robbery charged in the indictment--which is of course the same crime of which he was convicted originally.

Tollett v. Henderson, 411 U.S. 258, 267 (1973), and is accorded "a great measure of finality," Blackledge v. Allison, 431 U.S. 63, 71 (1977). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267;[12] see also United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam) ("[A] guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]"). Poventud's ability to attack his conviction therefore ended when he pled guilty to the hold-up. Cf. Pouncey v. Ryan,

---

[12] The Tollett bar, distinct from the rule in Heck, is grounded in collateral estoppel rather than the plaintiff's inability to prove a key element of his claim. See Tollett, 411 U.S. at 267; United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978) ("It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."). Certainly, some analytical overlap exists, and in this arena too the Supreme Court has rejected the notion that a federal remedy *must* be available to criminal defendants seeking to challenge state convictions. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84 (1984) ("§ 1983 did not open the way to relitigation of an issue that had been determined in a state criminal proceeding[.]").

396 F. Supp. 126, 128 (D. Conn. 1975) (Newman, J.) (relying on the "settled rule of law" that a civil suit may not be used to attack a criminal conviction and rejecting plaintiffs' attempt "to undermine the finality that must be accorded the tactical decision the plaintiffs made in tendering their pleas of guilty"); Molina-Aviles v. Dist. of Columbia, 797 F. Supp. 2d 1, 6-7 (D. D.C. 2011)[13] (dismissing § 1983 claims following guilty pleas because plaintiffs had opportunities to challenge their pleas but instead filed damages claims, "thereby undermining Plaintiffs' argument that Spencer applies because there are no habeas-type procedures available").[14]

---

[13] The Molina-Aviles court also held that "the fractured group of five concurring and dissenting Justices in Spencer cannot be found to have overruled the majority decision in Heck." Molina-Aviles, 797 F. Supp. at 5-6. Up to this point, Molina-Aviles is the only decision within the D.C. Circuit to reach this issue.

[14] See also Domotor v. Wennet, 630 F. Supp. 2d 1368, 1380 (S.D. Fla. 2009) aff'd, 356 F. App'x 316 (11th Cir. 2009) (Heck applied where the plaintiff, although no longer in custody, "entered into a plea agreement with knowledge of all or substantially all of the allegations that now form the basis of a § 1983 action for damages"); Lewis v. City of Clarksburg, 1:11-CV-192, 2013 WL 529954, at *8 (N.D. W. Va. Feb. 11, 2013) (internal citation omitted) (defendants, who pleaded guilty and then filed § 1983 claim upon release from custody, "are not exempt from Heck's favorable termination requirement because their inability to obtain habeas relief is self-imposed, and not the consequence of any unforeseen turn of the law"). To allow defendants, after pleading guilty, to file § 1983 actions that call into question their convictions would "enable them to 'end-run Heck,' and, at bottom, would confer on them the benefit of their plea bargain while shielding them from its consequences." Lewis, 2013 WL 529954, at *8 (internal citation omitted).

The majority hedges on this point: "Poventud's guilty plea may (or may not) supply defendants with a defense[.]" Maj. Op. at 9. But a valid outstanding conviction does supply defendants with a defense--one that is complete and categorical. See Heck, 512 U.S. at 489; Cameron v. Fogarty, 806 F.2d 380, 389 (2d Cir. 1986).

Additionally, it cannot matter that Poventud's guilty plea was to a lesser charge. The question remains whether success on Poventud's § 1983 claim would necessarily imply the invalidity of the outstanding conviction. Heck, 512 U.S. at 487. "[I]f a criminal conviction arising out of the same facts . . . is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (in banc) (citation and quotation marks omitted).

Several courts of this Circuit have dismissed § 1983 claims that sought damages for unlawful incarceration after the plaintiffs (like Poventud) pled guilty to lesser charges and were released from custody. For example, in McNeill v. People of City & State, No. 06-CV-4843 (NGG), 2006 WL 3050867 (Oct. 24, 2006), summarily aff'd, 242 F. App'x 777 (2d Cir. 2007), the vacatur of plaintiff's conviction for (inter alia) murder in the second degree was followed by his plea of guilty to assault (to avoid retrial) and his

28

immediate release. Id. at *1. The district court, citing Heck, dismissed the plaintiff's § 1983 claims alleging false arrest, false imprisonment, and malicious prosecution. Id. This Court affirmed, with no opinion needed to do so, because although "[a]ppellant's state court conviction was vacated, his subsequent guilty plea stands as a bar, under Heck, to a § 1983 action." McNeill v. People of City & State of N.Y., 242 F. App'x 777, 778 (2d Cir. 2007).

District Judge Sotomayor (as she was then) reached a similar conclusion in Papeskov v. Brown, and this Court agreed. No. 97 Civ. 5351(SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998), summarily aff'd, 173 F.3d 845 (2d Cir. Apr. 23, 1999) (dismissing § 1983 action brought by former inmate who was charged with assault and criminal possession of a weapon and pled guilty to harassment); see also Stein v. Cnty. of Westchester, N.Y., 410 F. Supp. 2d 175, 179 (S.D.N.Y. 2006) (dismissing § 1983 action brought by former inmate who successfully challenged conviction for, inter alia, rape and sodomy, later pled guilty to endangering the welfare of a child, and filed suit upon release).

These cases, non-binding as they are, nevertheless reflect the continued vitality of the Cameron line of precedent. McNeill is especially persuasive as a close

analog; and both of my colleagues in the majority on the present panel sat on the panel in McNeill.

The majority relies on other courts' opinions in cases that bear no resemblance whatsoever to the present. See Maj. Op. at 9 n.2 (citing Smith v. Gonzales, 222 F.3d 1220 (10th Cir. 2000) (holding that Heck was inapplicable where court vacated defendant's conviction and government filed nolle prosequi indicating that it would not prosecute defendant's case further); Davis v. Zain, 79 F.3d 18, 19 (5th Cir. 1996) (holding that Heck was inapplicable where court vacated defendant's conviction, defendant filed § 1983 action while second trial was pending, and court found it "highly unlikely that Davis's § 1983 suit will implicate the validity of his pending retrial")). The majority's labored search for support is telling.[15]

Some cases may present a difficult question as to whether the § 1983 action is fundamentally inconsistent with the defendant's guilty plea. Cf. DiBlasio v. City of N.Y., 102 F.3d 654, 659 (2d Cir. 1996) (Jacobs, J., concurring) (observing that a conviction on a lesser charge of drug *possession* might not bar the plaintiff's malicious

---

[15] The majority observes that "at the time he pled guilty Poventud was aware of the Brady violation on which his present lawsuit is based." Maj. Op. at 9 n.2. This statement is puzzling. Of course Poventud was aware of the alleged Brady violation; his conviction had just been overturned on that basis. Surely the point is that he chose to plead guilty to the crime rather than face retrial.

prosecution claim for drug *trafficking*).[16]  A fact-intensive inquiry may sometimes be needed, see <u>Covington v. City of New York</u>, 171 F.3d 117, 122 (2d Cir. 1999), but Poventud's allocution is clear enough:

> [THE COURT:]    In this case it's charged that on or about March 6, 1997, at approximately 8:40 in the evening, in the area of Oliver Place and Marion . . . Avenue here in the County of the Bronx, you did attempt to steal personal property from another person by using force, in that you used a weapon in your attempt to steal personal property.
>
> Are those charges true?
>
> THE DEFENDANT:    Yes.

A 93.

Poventud's guilty plea placed him at the scene of the crime of which he was originally convicted, at the same time

---

[16] <u>United States v. Gregg</u>, 463 F.3d 160, 163-65 (2d Cir. 2006) (per curiam) offers another helpful contrast.  There, we considered whether a defendant's guilty plea to a state charge of criminal impersonation barred him from raising a Fourth Amendment challenge to a federal firearms charge arising from the same events.  <u>Id.</u> at 162.  Because the firearm seizure "simply was not at issue" when the defendant pleaded guilty to criminal impersonation, his guilty plea did not bar a subsequent challenge to the search.  <u>Id.</u> at 166.  However, "*were Gregg challenging . . . the discovery of the evidence supporting the criminal impersonation charge to which he pled guilty, then . . . Gregg's Fourth Amendment claims would be foreclosed*."  <u>Id.</u> (emphasis added).

If Poventud had pled guilty to an unrelated charge, or if his § 1983 claim had alleged unrelated police misconduct, then Poventud's § 1983 action might not have undermined his plea, making the case arguably more akin to <u>Gregg</u> and <u>DiBlasio</u>.

of the same day, wielding a weapon, and holding up the victim. Poventud's § 1983 action calls that conviction and plea into question, challenging the victim's identification of him as one of his attackers, and asserting that Poventud "spent the entire evening of March 6, 1997, through the morning of March 7, 1997, at the home of his friend . . . playing video games. He was never anywhere near the vicinity of Oliver Place and Marion Avenue, where the shooting occurred." A 106. Success on Poventud's § 1983 action "would necessarily imply the invalidity" of his outstanding conviction. Heck, 512 U.S. at 487. It is therefore barred by Heck.

* * *

The final section of the majority opinion introduces the idea that Poventud's suit calls into question only his first conviction, not his second. See Maj. Op. at 14-16. As I have already shown, Poventud's claim is premised on his innocence of a crime to which he pled guilty. See supra at 32-33. Accordingly, it is foreclosed by Heck, which bars both an action to recover damages for unconstitutional conviction or confinement, as well as an action "that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful." Heck, 512 U.S. at 487 n.6. Poventud's claim

32

does both: [i] he seeks damages directly attributable to his confinement, and [ii] success on his claim would necessarily imply that his conviction (by guilty plea) was wrongful. Poventud cannot evade this fact by "'[s]eeking damages only for punishment he suffered in excess of the one-year imprisonment he accepted as part of his plea.'"  Maj. Op. at 15 (quoting Appellant Br. 32).

Turning elsewhere, the majority posits the hypothetical of a defendant who is tortured, then confesses, then successfully challenges his conviction, then pleads guilty prior to retrial (under no compulsion), and is then released from prison.  I have three short responses:

- Such a defendant would not need to rely on § 1983 because he could pursue intentional tort claims against the offending officers--state or federal. See N.Y. Ct. Cl. Act § 8 (McKinney) (waiving sovereign immunity); Millbrook v. United States, 133 S. Ct. 1441, 1446 (2013) (holding that waiver of sovereign immunity under Federal Tort Claims Act for intentional acts committed by federal law enforcement was not limited to investigative activities).

- I agree with the majority that "the claim for damages for torture [would] in no way undercut[] the second, and only existing, conviction and hence

[would] in no way [be] barred by <u>Heck</u>," Maj. Op. at 15. That is because a claim for torture damages would not necessarily imply the invalidity of the defendant's conviction. <u>Cf.</u> <u>Jackson v. Suffolk Cnty. Homicide Bureau</u>, 135 F.3d 254, 257 (2d Cir. 1998) (holding that <u>Heck</u> did not bar Fifth Amendment claim for excessive force because "a finding that excessive force had in fact been used would not necessarily require invalidation of the conviction"). However, what the defendant categorically may *not* do is seek damages for "unlawful" confinement for criminal conduct that he freely admitted.

- The majority opinion thus illustrates the hazard of creating constitutional law under the influence of a seminar hypothetical.