**UNITED STATES of America,
Appellee,**

v.

**Anthony GREGG, Defendant–Appellant.**

**Docket No. 03–1229 CR.**

United States Court of Appeals,
Second Circuit.

Argued: May 9, 2006.

Decided: Sept. 12, 2006.

---

Joseph W. Martini, Southport, Connecticut (Pepe & Hazard LLP, New York, NY), for Defendant–Appellant.

Harry Sandick, Assistant United States Attorney, (Michael J. Garcia, United States Attorney for the Southern District of New York; Celeste L. Koeleveld, Assistant United States Attorney, of counsel), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

FEINBERG, SOTOMAYOR, and HALL Circuit Judges.

PER CURIAM.

Anthony Gregg appeals from a judgment of conviction entered on April 11, 2003, in the United States District Court for the Southern District of New York (Preska, *J.*). Gregg was convicted of one count of unlawfully possessing a firearm *after having been convicted of a felony*, in violation of 18 U.S.C. § 922(g)(1) (the "felon-in-possession" charge). Gregg raises three arguments on appeal: (1) the district court improperly precluded the "innocent possession" defense to the felon-in-possession charge; (2) the district court improperly admitted into evidence certain post-arrest statements taken in violation of *Miranda*; and (3) the district court erred when it ruled that he had waived any Fourth Amendment challenges in his federal firearms case by pleading guilty to a prior state charge of criminal impersonation that arose from the same set of events that led to the federal gun charges. We have resolved Gregg's first two arguments by summary order, filed simultaneously with this opinion, and here address only the waiver issue.

## Background

On March 20, 2001, at approximately 10:40 p.m., Gregg walked through a turnstile at the 167th Street subway station in the Bronx using a reduced fare Metrocard normally issued only to the elderly or disabled. As Gregg passed through the turnstile, New York City Police Officer Scott Miller, standing in a utility room near the turnstile, saw a red light on the turnstile illuminate. The red light indicated that Gregg had used a reduced fare or "disability Metrocard." Miller and his partner approached Gregg on the platform and asked to see his Metrocard. After Gregg presented the officers with a disability fare Metrocard that contained the name and photograph of his mother, Roberta Gregg,

he was arrested for illegal use of the Metrocard ("theft of service," according to the arresting officers' terminology).

During the arrest process, Officer Miller patted down Gregg. As his hand passed over Gregg's waistband area, Officer Miller felt a "bulge" on the left-hand side. The officers recovered a. 380 Tanfoglio semiautomatic pistol. After recovering the gun, but before reading Gregg his *Miranda* rights, the police asked him how to remove the firearm's magazine. Gregg instructed them on where to find the release button.

Gregg was charged in state proceedings with criminal possession of a weapon in the third degree, but the grand jury refused to indict him on that charge. Having avoided that indictment, Gregg disposed of his state criminal charges by pleading guilty to a state charge of criminal impersonation in the second degree and serving a fifteen-day sentence. A federal grand jury subsequently returned an indictment against Gregg on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Prior to trial Gregg moved to suppress both the gun and certain statements he made to the police at the time of his arrest. Relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Gregg argued the police should never have stopped and questioned him that night on the subway platform because they did not have reasonable suspicion to believe that he had engaged in criminal behavior. Gregg contended his mere use of the Metrocard to pass through the turnstile gave the police no basis to suspect him of any criminality. Gregg asserted that the firearm and the statements should be suppressed because the investigative stop, the questioning, and the arrest violated the Fourth Amendment.

The district court, however, did not reach the substance of Gregg's Fourth Amendment claims. The district court denied Gregg's suppression motion, holding that "because he pleaded guilty on April 2, 2001 to the criminal impersonation offense for which the March 20 arrest was initially made, Gregg has waived any such Fourth Amendment challenges." The case went to trial and Gregg was convicted. He was sentenced to 77 months' imprisonment and three years of supervised release.

## Discussion

█ This case requires us to determine if Gregg's plea of guilty to the state charge of criminal impersonation effectively waived any Fourth Amendment challenges to the subsequent federal felon-in-possession charge stemming from the same stop and arrest. The district court relied primarily on *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), to answer this question in the affirmative. We hold that Gregg did not waive his Fourth Amendment challenges to the federal charge on which he was indicted. Nevertheless, as explained below, we do not disturb the district court's denial of Gregg's motion to suppress the firearm. We write here, however, to clarify that *Tollett* does not support the broad "waiver" proposition adopted by the district court.

The district court held that "a defendant who enters a guilty plea in a criminal proceeding may not subsequently challenge the events that led up to that proceeding on Fourth Amendment grounds." The district court then cited several of this Court's precedents dealing with appealable waiver of constitutional challenges to pre-plea investigative misconduct by law enforcement, e.g., propriety of a search and seizure under the Fourth Amendment and existence of probable cause for an arrest.

Gregg objected that "by failing to contest the constitutionality of his arrest in state court, [he did not] unequivocally waive[ ] all objections to that arrest in any context, including those that would be made in federal court on charges not extant at the time of the state proceeding." The district court responded that "[t]he reasoning of *Tollett* and its progeny applies with equal force here, even though Gregg pleaded guilty in state court and also was charged in federal court." Specifically, the court noted that "Gregg's plea in state court cannot be disregarded merely on the basis of the venue in which it was entered." In the district court's view, Gregg's situation was the result of litigation strategy, which always carries with it both risks and benefits. While Gregg benefitted by receiving a days-long sentence to a significantly lesser state charge of criminal impersonation, he also knowingly accepted the risk that subsequent more serious federal charges could result from the events of that night. Thus, the district court reasoned that his failure to raise Fourth Amendment objections to the gun seizure during state proceedings on the criminal impersonation charge barred him from raising such objections on the gun possession charge in the federal forum.

The Supreme Court has instructed, however, that *Tollett* does "not rest on any principle of waiver." *Haring v. Prosise*, 462 U.S. 306, 321, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). Rather, it rests on notions of relevance:

Our decisions in *Tollett* and the cases that followed simply recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.... Therefore, the conclusion that a Fourth

Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction. *Id.*

As the Court has explained, a guilty plea does not "waive" constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue:

> Neither *Tollett* . . . nor our earlier cases on which it relied . . . stand for the proposition that counseled guilty pleas inevitably "waive" all antecedent constitutional violations. . . . [I]n *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

*Menna v. New York,* 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). *Menna* explains that a guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty. Therefore, at least on collateral attack of a judgment of conviction, under *Tollett* a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt. *See Tollett,* 411 U.S. at 266, 93 S.Ct. 1602.

Whether that same guilty plea forecloses a future cause of action or legal proceeding, however, " 'is to be determined on the basis of other principles, specifically, of collateral estoppel and the full faith and credit statute.' " *Prosise,* 462 U.S. at 310, 103 S.Ct. 2368 (quoting *Prosise v. Haring,* 667 F.2d 1133, 1136–37 (4th Cir.1981)). *Prosise* illustrates the type of analysis that a court should undertake.

Prosise pleaded guilty in state court to one count of manufacturing a controlled substance and was sentenced to 25 years' imprisonment. While in state prison, Prosise filed a civil action under 42 U.S.C. § 1983 against the various law enforcement officers who had participated in the search of his apartment. He alleged in the complaint that the officers unlawfully searched the premises without a warrant and after securing the warrant conducted a search beyond the scope of the warrant. *Id.* at 309, 103 S.Ct. 2368. The district court granted summary judgment in favor of the police officers, reasoning that in failing to raise his Fourth Amendment claim in state court, Prosise waived the right to assert it in a subsequent proceeding. The Supreme Court concluded that Prosise's guilty plea did not preclude him from litigating the validity of the search for purposes of § 1983 damages. Its reasoning sheds dispositive light on the waiver issue presented here.

The Court held that Prosise was not collaterally estopped from challenging the legality of the search because: (1) Prosise's guilty plea did not involve any litigation over the legality of the search of his apartment; (2) the criminal proceedings did not actually decide against Prosise any issue upon which he must prevail in his § 1983 claim; and (3) it was not established that any of the issues in his § 1983 action could have been "necessarily" determined in the criminal proceeding, i.e., the

legality of the apartment search was irrelevant to Prosise's guilty plea. *Id.* at 316, 103 S.Ct. 2368.

 Relevant to the present appeal, in *Prosise* the state also argued that "by pleading guilty Prosise should be deemed to have either admitted the legality of the search or *waived any Fourth Amendment claim*, thereby precluding him from asserting that claim in any subsequent suit." *Id.* at 318, 103 S.Ct. 2368 (emphasis added). The Supreme Court rejected the "anomalous rule" urged by the State on several grounds. It noted that Prosise's guilty plea "in no way constituted an admission that the search of his apartment was proper under the Fourth Amendment." *Id.* The Court noted that "a prospect of a favorable plea agreement or 'the expectation or hope of a lesser sentence . . . are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether [a Fourth Amendment challenge to the introduction of inculpatory evidence] might be factually supported.'" *Id.* at 319, 103 S.Ct. 2368 (quoting *Tollett,* 411 U.S. at 268, 93 S.Ct. 1602). Importantly, the Court also rejected the view that by pleading guilty Prosise "waived" his claim of an antecedent Fourth Amendment violation. *Id.* The Court explained that its post-*Tollett* decisions do not interpret that case to announce a broad waiver principle and offered several illustrations in which a guilty plea in state proceedings does not bar a subsequent federal claim related to events preceding the guilty plea. For example:

A defendant who pleads guilty may seek to set aside a conviction based on prior constitutional claims which challenge the very power of the state to bring the defendant into court to answer the charge against him . . . a double jeopardy claim may be raised in federal habeas proceedings following a state-court conviction based on a plea of guilty . . . [and] *Tollett* does not apply to preclude litigation of a Fourth Amendment claim subsequent to a guilty plea when the State itself permits the claim to be raised on appeal.

*Id.* at 320, 103 S.Ct. 2368 (internal quotations and citations omitted). We draw several principles from *Tollett* and its progeny relevant to the appeal at hand: (1) when a defendant is convicted after a plea of guilty, the validity of that conviction is unaffected by an alleged Fourth Amendment violation; (2) a counseled guilty plea will not waive defendant's right to collaterally alleged Fourth Amendment violations; and (3) the preclusive effect of a guilty plea entered in state court upon subsequent federal proceedings is determined on the basis of collateral estoppel and the full faith and credit statute.

 Applying the above principles, we cannot agree with the district court's ruling that by pleading guilty to the state charge of criminal impersonation Gregg waived his Fourth Amendment challenges to the federal felon-in-possession charge. Just as the Court determined in *Prosise* that the defendant's guilty plea did not preclude him from seeking § 1983 damages for an alleged Fourth Amendment violation that was never considered in the state criminal proceedings, we find that Gregg should not have been barred—under either waiver or collateral estoppel principles [1]—from challenging the seizure

---

1. Under New York's law of collateral estoppel, only two requirements must be satisfied: (1) it must be proved that "the identical issue was necessarily decided in the prior action and is decisive in the present action"; and (2) "the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination." *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,* 76

of the gun on Fourth Amendment grounds. The legality of the firearm seizure simply was not at issue when Gregg pleaded guilty to criminal impersonation. The factual predicate for Gregg's plea was that the police observed a red light illuminate as Gregg swiped his Metrocard at the turnstile. This light indicated to the officers that Gregg had used a reduced fare or "disability Metrocard." Noticing Gregg appeared neither elderly nor disabled, the officers inquired as to whose Metrocard he was using. Gregg produced his mother's disability Metrocard, and he was arrested for the offense. Given that Gregg was afforded the opportunity to plead guilty to a far less serious charge than gun possession, he had no incentive whatsoever to litigate the propriety of the firearm seizure. In fact, the prospect of such a favorable plea agreement strongly "suggest[s] the advisability of a guilty plea without elaborate consideration of [any Fourth Amendment challenges]." *Id.* at 319, 103 S.Ct. 2368.

Our conclusion is consistent with *Tollett* and *Prosise.* Were Gregg challenging law enforcement's conduct leading up to his surrender of his mother's Metrocard, i.e., the discovery of the evidence supporting the criminal impersonation charge to which he pled guilty, then under the *Tollett* line of cases Gregg's Fourth Amendment claims would be foreclosed. This is because the plea conclusively establishes his factual guilt on the impersonation charge; how the supporting evidence was recovered is irrelevant. *See Menna,* 423 U.S. at 62 n. 2, 96 S.Ct. 241. That is not the case here. In the instant case, Gregg challenges law enforcement's seizure of the firearm *after* the recovery of the misused Metrocard. Therefore, the validity of Gregg's criminal impersonation conviction could not be affected by the alleged Fourth Amendment violations he asserted on the federal felon-in-possession charge.

█ Although we find that Gregg did not waive his right to challenge the seizure of the gun, and that the district court should have addressed on the merits Gregg's motion to suppress, we nevertheless affirm its denial of the motion. *See United States v. Yousef,* 327 F.3d 56, 156 (2d Cir.2003) ("We are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied.") (quotations and citations omitted). Undisputed facts in the record indicate the police officers stopped Gregg and questioned him regarding his apparently unjustified use of a disability Metrocard. Such facts are sufficient to establish reasonable suspicion under *Terry.* Gregg's plea of guilty to the criminal impersonation charge only further establishes that the stop and arrest on that charge was constitutional. *See United States v. Doyle,* 348 F.2d 715, 718 (2d Cir.1965) (noting "a plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defects") (quotations and citation omitted). Therefore, the gun was properly recovered as a search incident to the arrest. *See United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

### Conclusion

For the foregoing reasons, we **AFFIRM** the decision of the district court. We **REMAND** pursuant to *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), to enable the district court to determine whether to resentence defendant thereto.

N.Y.2d 659, 664, 563 N.Y.S.2d 24, 564 N.E.2d 634 (1990).