DENNIS JACOBS, Chief Judge,
dissenting:
Marcos Poventud’s 1998 New York State conviction for holding up a livery-car driver was vacated by the courts of New York on a Brady violation, and he was released from custody in 2005 after pleading guilty — on lesser charges — to the same hold-up at the same place and time, on the same date. He has sued prosecutors and police, under 42 U.S.C. § 1983, for achieving his conviction for a crime that he committed — as he has conceded under oath and in open court. The United States District Court for the Southern District of New York (Batts, J.) dismissed the complaint on the ground that, under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), he cannot sue under § 1983 unless the conviction has been overturned. I would affirm. The only errors in this case have been introduced on appeal.
The majority holds that Heck is no bar to a civil suit once the sentence has been served, regardless of whether the eonvic *66 tion was overturned. The majority relies on a concurrence in Heck and dicta in other Supreme Court cases, and on Second Circuit case law that has accrued along these lines.
I respectfully dissent. My objection goes deep, to the root of the error in Second Circuit cases that prefer dicta in Heck to its holding — a holding that confirmed longstanding Second Circuit law. As the majority opinion states, concurrences in Heck and Spencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) posited the idea that Heck might not bar a civil claim for damages notwithstanding that the claim necessarily called into question an undisturbed criminal conviction, if habeas is unavailable to challenge the conviction under the federal Constitution. Spencer precipitated a Circuit split, with some Circuits recognizing a few narrow exceptions to Heck, and others countenancing no exception at all. The majority opinion follows and extends a line of cases in this Circuit that cannot be located on either side of that Circuit split. The majority opinion holds that Heck is a bar to suit under § 1983 only until the convict is released from custody (because habeas is no longer available to a person at liberty); and this stretch is widened to discount a post-vacatur plea of guilt to lesser charges on the same crime.
The majority opinion thus places at risk of constitutional litigation — for decades— prosecutors and police who obtained convictions of persons who indisputably or even admittedly committed the crimes charged.
I would affirm the district court’s judgment. The unconstitutional conduct for which Poventud seeks damages is the failure to disclose the identification of another person as having committed the crime. The premise of that claim — that Poventud was denied the opportunity to effectively challenge his identification as the perpetrator — necessarily implies the invalidity of the unchallenged, subsisting conviction that was entered on Poventud’s plea of guilty to that crime. Heck therefore bars Poventud from asserting his § 1983 claim.
I
In 1998, a jury convicted Poventud of attempted murder in the second degree, attempted robbery in the first degree, and criminal possession of a weapon in the first degree, in connection with the armed robbery and shooting of Younis Duopo as he was driving a livery cab. The time and place were: approximately 8:40 p.m. on March 6, 1997, between Oliver Place and Marion Avenue in the Bronx. The conviction and the 10-to-20 year sentence were affirmed on appeal. See People v. Poventud, 300 A.D.2d 223, 224, 752 N.Y.S.2d 654 (1st Dep’t 2002).
In 2005, the New York Supreme Court, Bronx County, vacated the conviction and ordered a re-trial on the ground that the prosecution had withheld potentially exculpatory evidence. This ruling was highly solicitous of Poventud’s rights; in fact, the evidence withheld might as easily be viewed as inculpatory.
After the hold-up, photo ID of Poven-tud’s brother Francisco was found in a wallet in Duopo’s vehicle. When shown the photograph of Francisco, Duopo opined that it “looks like” the perpetrator, or “looks a lot like him.” A 98. (The majority calls this a positive identification.[1] See Maj. Op. at 58-59.) After it was ascertained that Francisco was and had been in prison, Duopo positively identified Mar *67 cos Poventud, as he later did in a line-up and for a third time in the courtroom. A 98, 114. The state court ordered a re-trial on the ground that Brady was violated by the State’s failure to disclose Duopo’s observation that Francisco’s photo resembled the perpetrator. See People v. Poventud, 10 Misc.3d 337, 802 N.Y.S.2d 605, 608 (Brx. Cnty.2005).
Poventud claims that he looks nothing like his own brother (which would certainly make Duopo’s observation uncanny), and that it is just one of those coincidences that his jailed brother’s photo ID was left at the scene of the crime.
Poventud had the opportunity to test those explanations before a jury on retrial. Instead, Poventud pled guilty to attempted robbery in the third degree. At his hearing, he admitted to holding up Duopo as he was driving a livery cab at: approximately 8:40 p.m. on March 6,1997, between Oliver Place and Marion Avenue in the Bronx. The plea colloquy thus resolved the issue: Duopo’s identification of Poventud was sound. A 93. Poventud was re-sentenced to one year in prison and, because he had already served nine years, was released.
Upon release from prison, Poventud filed a motion challenging the voluntariness of his plea, but later withdrew the motion. He then filed this damages action under 42 U.S.C. § 1983 alleging that the prosecution’s Brady violation deprived him of a fair trial. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Judge Batts ruled that Poventud’s claims were barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and dismissed the case. See Poventud v. City of N.Y., No. 07 Civ. 3998(DAB), 2012 WL . 727802, at *3 (S.D.N.Y. Mar. 6, 2012).
II
Even before Heck, our Circuit (like many others) barred § 1983 claims that necessarily implied the invalidity of outstanding convictions — and did so regardless of whether the plaintiff remained in jail. The seminal case was Cameron v. Fogarty, 806 F.2d 380 (2d Cir.1986), which explained why a plaintiffs outstanding conviction (for possession of stolen property) barred his damages action for false arrest under § 1983: “the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.” Id. at 388 (emphasis added). Cameron extended that principle to § 1983 actions, observing: “The right to bring suit under § 1983 is designed both to allow an injured person to obtain compensation for the loss of his civil rights and to deter public officials from further violation of such rights.” 806 F.2d at 388. Yet, neither interest “is more than minimally implicated where the [claimant] was convicted.” Id.; see also Singleton v. City of N.Y., 632 F.2d 185, 195 (2d Cir.1980) (dismissing malicious prosecution claim brought under § 1983 on the same grounds).
The rule was given broad application. In Roesch v. Otarola, 980 F.2d 850 (2d Cir.1992), we explained that a § 1983 plaintiff who seeks to challenge his conviction “must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his Section 1983 claim.” Id. at 853. We later held that this bar applied to Brady violations, Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir.1999), as well as related claims under §§ 1981, 1985, and 1986, id. at 51-52.[2] And, as discussed infra at 76- *68 77, several courts in this Circuit have held (and we have affirmed) that the bar applies even if the subsequent guilty plea is to a lesser charge. See McNeill v. People of City & State, No. 06-CV-4843(NGG), 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006), summarily aff'd, 242 Fed.Appx. 777 (2d Cir.2007); Papeskov v. Brown, No. 97 Civ. 5351(SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) (Sotomayor, J.), summarily aff'd, 173 F.3d 845 (2d Cir. 1999); see also Stein v. Cnty. of Westchester, N.Y., 410 F.Supp.2d 175, 179 (S.D.N.Y. 2006).
None of these cases turned on whether the plaintiff was incarcerated or at liberty when suit was filed, or suggested that this consideration had any weight or bearing. In most of these cases, the plaintiff was not in custody. See, e.g., Roesch, 980 F.2d at 850; Singleton, 632 F.2d at 195; McNeill, 2006 WL 3050867, at *2-3; Papeskov, 1998 WL 299892, at *5; Stein, 410 F.Supp.2d at 179.
These decisions consistently and methodically applied the rule that plaintiffs may not use § 1983 to call into question an outstanding criminal conviction, a rule that avoided “the prospect of harassment, waste and endless litigation, contrary to principles of federalism.” Singleton v. City of N.Y., 632 F.2d 185, 195 (2d Cir. 1980).
The majority relies on Leather v. Ten Eyck, 180 F.3d 420 (2d Cir.1999) (Calabresi, J.) and cases that cited or followed it;[3] but these cases could not have undone the law of this Court without review in banc.[4] See United States v. King, 276 F.3d 109, 112 (2d Cir.2002). In any event, our Circuit law, as it was settled before Leather, was validated and confirmed by the Supreme Court in Heck v. Humphrey, 512 U.S. 477, 114. S.Ct. 2364, 129 L.Ed.2d 383 (1994). While Heck was serving a fifteen-year sentence for voluntary manslaughter and his direct appeal was still pending, he brought a § 1983 action alleging that prosecutors and police officers had destroyed exculpatory evidence. Id. at 478-79, 114 S.Ct. 2364. The Supreme Court affirmed the dismissal of the claim because “civil tort actions are not appropriate vehicles for challenging the validity of outstanding *69 criminal judgments,” and because success on the plaintiffs § 1983 claim “would necessarily imply the invalidity of his conviction or sentence^]” Id. at 486-87, 114 S.Ct. 2364. To recover damages for allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff “must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus[.]” Id.
This requirement is animated by the values of finality and consistency, and “a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.” Id. at 484, 114 S.Ct. 2364 (citation and quotation marks omitted). Heck, which strengthened and validated our existing precedent, remains the rule until — if ever — the Supreme Court alters its holding.
Ill
A Circuit split has opened as to whether some exceptions to Heck may be permitted on the basis of self-described dicta signed by five Justices (three of whom are no longer on the Court). The majority opinion patches together the various concurrences and passages of dicta, identifying the Justices (some active, some retired) who wrote or signed the opinions. See Maj. Op. at 60-61 (discussing Spencer v. Kemna, 523 U.S. 1, 18-21, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (Souter, J., concurring)). In a nutshell, these Justices posited that “a former prisoner, no longer ‘in custody,’ may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy.” Spencer, 523 U.S. at 21, 118 S.Ct. 978 (Souter, J., concurring) (emphasis added). While some Circuits carve out a narrow exception to Heck’s holding based on the Spencer concurrences, the majority in our case adopts a view that would have no basis even in Supreme Court dicta.
Several courts of appeals have concluded (as I do) that the Spencer concurrences cannot override Heck’s binding precedent. See, e.g., Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir.2007); Gilles v. Davis, 427 F.3d 197, 209-10 (3d Cir.2005); Randell v. Johnson, 227 F.3d 300, 301 (5th Cir.2000); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir.1998).
These opinions heed the Supreme Court’s admonition that, even if binding precedent “appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this [Supreme] Court the prerogative of overruling its own decisions.” Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (citations and internal quotation marks omitted). We adhere to that rule: “It is not within our purview to anticipate whether the Supreme Court may one day overrule.its existing precedent.” United States v. Santiago, 268 F.3d 151, 155 n. 6 (2d Cir.2001).
Other Circuits have nevertheless held that Spencer’s dicta does allow for unusual and compelling circumstances in which Heck’s holding does not absolutely foreclose a claim. See, e.g., Burd v. Sessler, 702 F.3d 429, 435-36 (7th Cir.2012); Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir.2010); Wilson v. Johnson, 535 F.3d 262, 267-68 (4th Cir.2008); Powers v. Hamilton Cnty. Public Defender Comm’n, 501 F.3d 592, 603 (6th Cir.2007); Guerrero v. Gates, 442 F.3d 697, 704 (9th Cir.2006); Harden v. Pataki, 320 F.3d 1289, 1298 (11th Cir.2003).
*70 But even the courts that recognize certain narrow exceptions to Heck emphatically reject the idea that the rule in Heck no longer applies once a convict exits the prison gates. The Seventh Circuit, for instance, recently dismissed a claim by a released convict who argued that § 1983 must be made available if habeas relief is not. See Burd, 702 F.3d at 435-36 (holding that “Heck applies where a § 1983 plaintiff could have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing”). Likewise the Ninth Circuit: “The fact that [a criminal defendant] is no longer in custody and thus cannot overturn his prior convictions by means of habeas corpus does not lift Heck’s bar.” Guerrero, 442 F.3d at 704.[5] And the Sixth Circuit: “It seems unlikely that Justice Souter intended to carve out a broad Heck exception for all former prisoners.” Powers, 501 F.3d at 603.
Our Court has gone its own way, without adhering to either side of this broad Circuit split. This Circuit first invoked the Spencer dicta in Leather v. Ten Eyck, 180 F.3d 420 (2d Cir.1999) (Calabresi, /.), to allow an individual fined for drunk driving to seek damages in federal court even though he chose to forgo an appeal in state court. A year later, the Spencer dicta was adopted as a holding, in a broadened and generalized form, in Green v. Montgomery, 219 F.3d 52 (2d Cir.2000) (Calabresi, ./.): “Heck acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody).” Id. at 60 n. 3. The majority’s present opinion builds on this error.
The final segment of the majority opinion cites several Second Circuit opinions to argue for a spurious consensus. Two of those cases allowed § 1983 claims to proceed when the plaintiff challenged conditions of confinement rather than the fact or duration of confinement. See Jenkins v. Haubert, 179 F.3d 19, 25 (2d Cir.1999) (Walker, J.); Sims v. Artuz, 230 F.3d 14, 24 (2d Cir.2000) (Kearse, /.). These uncontroversial decisions are straightforward applications of Supreme Court precedent. See Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Another case cited by the majority, Huang ex rel. Yu v. Johnson, 251 F.3d 65 (2d Cir.2001) (Winter, J.), is likewise inappo-site. See id. at 67 (considering whether New York law required court to credit a juvenile for time spent in a different institution on an unrelated charge); see also Huang ex rel. Yu v. Johnson, 274 F.3d 682, 682-83 (2d Cir.2001) (per curiam) (dismissing case after New York Court of Appeals held that government agency properly calculated juvenile’s sentence). The majority devotes considerable space to these dissimilar cases, see Maj Op. at 61, 62-65, and counts on fingers the judges involved in their dispositions, see id. at 63 n. 4. It is true that these opinions cited the Spencer dicta with approval, expressing support for a very narrow exception that the majority opinion here expands immoderately and adopts as a holding. But I decline to argue over dicta distilled from dicta — especially when the Supreme Court, ten. sister Circuits, and numerous cases in this Circuit counsel otherwise. See supra at 66-68, 69-70.
*71 IV
The majority’s holding — that Heck is inapplicable because Poventud was no longer in custody when he filed suit — relies (as I have shown) on Justice Souter’s dicta in Spencer v. Kemna, 523 U.S. 1, 3, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), which the majority opinion presumes to elevate as the “better” rule. See Maj. Op. at 60. (The Justices are free to choose the “better” rule — or a worse one, for that matter — but we are not.) In Heck, the Court made its choice perfectly clear.
Heck involved a challenge by a plaintiff in custody, but the opinion left no doubt that its holding applied regardless of whether the plaintiff was in custody or at liberty:
We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.
Heck, 512 U.S. at 486-87, 114 S.Ct. 2364. The majority here presumptuously concludes that Heck’s holding is expressed with careless overbreadth, and is not intended to apply to all § 1983 actions including those filed by released convicts.[6]
Heck’s reasoning confirms that its holding means what it says. Favorable termination is an absolute prerequisite to § 1983 actions that seek damages arising from unlawful incarceration: ‘We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action.” Id. at 489, 114 S.Ct. 2364. Since no cause of action exists under § 1983 so long as the plaintiff stands convicted of the crime, it cannot matter whether a plaintiff whose conviction subsists is in custody or at liberty, or has (or could have) pursued habeas relief.
The incompatibility between Heck’s holding and Justice Souter’s dicta is acknowledged by Justice Souter’s expression of his views in terms of disagreement.[7] *72 Reciprocally, the majority opinion in Heck rejected Justice Souter’s bid to narrow its holding:
Justice Souter also adopts the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an outstanding criminal conviction, but thinks it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges. We think the principle barring collateral attacks — a longstanding and deeply rooted feature of both the common law and our own jurisprudence— is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.
Id. at 490 n. 10, 114 S.Ct. 2864 (emphasis added) (internal citation omitted).
The majority in our case deprecates this footnote as dictum, Maj. Op. at 60 (though it is unclear to me why this would make it less compelling to the majority, whose entire argument here rests on nothing else). I disagree: the passage does not address some ancillary issue; it responds directly to Justice Souter’s criticism, emphasizing that the scope and rationale of the holding are broad enough to be unaffected by whether the plaintiff is in jail or not. “ ‘A dictum ... is an assertion in a court’s opinion of a proposition of law [that] does not explain why the court’s judgment goes in favor of the winner.’ ” Barclays Capital Inc. v. Theflyonthewall.com, Inc., 650 F.3d 876, 899 (2d Cir.2011) (quoting Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L.Rev. 1249, 1256 (2006)). As illustrated ábove, Heck made clear that the rule did not impose an exhaustion requirement and did not turn on the availability of habeas relief or whether the plaintiff is still in jail. Heck, 512 U.S. at 489, 490 n. 10, 114 S.Ct. 2364. Just as a court may state (in binding terms) what the rule is, it may also state (in terms equally binding) what the rule is not,
In any event, footnote ten only reinforces what Heck’s holding makes plain: a claim for damages that necessarily implies the invalidity of an outstanding conviction is not cognizable under § 1983. Heck, 512 U.S. at 486-87, 114 S.Ct. 2364.
The concurrences in Heck and Spencer could not narrow or redefine or otherwise alter the Supreme Court’s holding. Unlike plurality opinions, in which “the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds,” Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), a majority opinion dictates the precise contours of the Court’s holding. See Abra-mowiez & Stearns, supra n. 6, at 1059. “Critically, this is so even if a Justice concurring in the judgment would have preferred instead to resolve the case on a narrower ground[J” Id. Likewise, the majority here concedes, as it must, that Supreme Court dicta does not outweigh Circuit precedent; only an intervening Supreme Court decision will have that effect. See Maj. Op. at 64 n. 7 (citing Meacham v. Knolls Atomic Power Lab., 381 F.3d 56, 70 (2d Cir.2004) and Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 101 n. 12 (2d Cir.2005)).
V
The majority opinion runs counter to the several values that animate Heck (and our pre-Heck jurisprudence).
*73 The Supreme Court has “long expressed ... concerns for finality and consistency and has generally declined to expand opportunities for collateral attack.” Heck, 512 U.S. at 484-85, 114 S.Ct. 2364. The majority opinion posits a rule that makes the opportunity for inconsistent collateral attack eternal.
A § 1983 action that necessarily impugns an outstanding conviction subverts the “longstanding and deeply rooted” principle barring collateral attacks, id. at 490 n. 10, 114 S.Ct. 2364, whether or not the challenge is issued from prison. An exception for released inmates would violate “the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.” Id. at 486, 114 S.Ct. 2364. It is an irrelevant “fortuity that a convicted criminal is no longer incarcerated.” Id. at 490 n. 10, 114 S.Ct. 2364.
The majority’s approach here also undermines federalism. “Federal post-trial intervention, in a fashion designed to annul the results of a state trial, ... deprives the States of a function which quite legitimately is left to them[.]” Huffman v. Pursue, Ltd., 420 U.S. 592, 609, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). To allow collateral attacks on criminal convictions in federal court upon the convict’s release from state prison would “fly in the teeth of Heck,” Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir.1998), and would impair the fundamental principles that compelled its holding.
The majority opinion has the single virtue of assuring that there is absolutely no residual unavailability of federal remedies to any state criminal defendant. However, there is' no support in the Constitution or in § 1983 for the principle that “every person asserting a federal right is entitled to one unencumbered opportunity to litigate' that right in a federal district court.” Allen v. McCurry, 449 U.S. 90, 103, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). A § 1983 action need not “always and everywhere be available.” Spencer, 523 U.S. at 17, 118 S.Ct. 978.
Section 1983 aside, a convicted criminal is not without recourse. Upon release from custody, a convict may .seek habeas relief if the State continues to impose significant restraints on his liberty, -such as probation or parole. See Jones v. Cunningham, 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Even absent such a showing, courts are now willing to presume that a criminal conviction has continuing collateral consequences that could support a post-release habeas petition. See Spencer v. Kemna, 523 U.S. 1, 8, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); see also Nonnette v. Small, 316 F.3d 872, 878 n. 7 (9th Cir.2002) (“[T]he status of prisoners challenging their underlying convictions or sentences does not change upon release, because they continue to be able to petition for a writ of habeas corpus.”). The inability to bring a- § 1983 action alone may constitute a collateral consequence sufficient to overcome a mootness challenge and support a convict’s post-release habeas petition.[8] See Leonard v. Nix, 55 *74 F.3d 370, 373 (8th Cir.1995) (“Leonard’s section 1983 action gives this case life, for if Leonard wins this habeas action, the state becomes vulnerable to his section 1983 damages claim. Leonard’s petition is therefore not moot.”); see also O'Neill v. City of Phila., 32 F.3d 785, 788 n. 7 (3d Cir.1994); Sule v. Warden, ADX Florence Colo., 133 F.3d 933, 1998 WL 10240, at *2 (10th Cir. Jan. 13, 1998) (unpublished). And, of course, all criminal defendants may pursue a direct appeal — whether or not they remain in jail — through the state court system and on to the Supreme Court of the United States. Supreme Court review is itself “sufficient to preserve the role of the federal courts as the ultimate guardians of federally guaranteed rights.” Waste Mgmt. of Wis., Inc. v. Fokakis, 614 F.2d 138, 141 (7th Cir.1980). Under any circumstance, then, the convicted criminal has post-release remedies available in both federal and state court.[9]
The majority opinion falls victim to the judicial fallacy of viewing the ramifications of any legal principle through the single prism of the plaintiffs interests. But it should be obvious that important interests are dis-served when every prosecutor and every police officer remains subject to suit for acts alleged to have happened years and decades in the past, after memory fades, witnesses move on, and evidence is discarded. The worse the crime for which the plaintiff was convicted, the longer the sentence, and thus the worse the peril for public officials, who may years later no longer be indemnified or defended.
The majority opinion likewise disadvantages the class of persons who achieve vacatur of their convictions. Allowing defendants to seek damages under § 1983 after pleading guilty would create an incentive for prosecutors to retry the case rather than offer a plea based on time served. Cf. Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir.1999) (observing that if the court were to recognize a § 1983 action following a plea of nolo contendere, it would make prosecutors, faced with the prospect of continuing litigation and a possible damages award, much less likely to offer such a deal). It would also “undermine the finality of plea bargains and jeopardize society’s interest in a system of compromise resolution of criminal cases.” *75 Id. Finality is a vital principle, not a bureaucratic means of closing the judicial books.[10] The majority opinion offers no appreciable counterweight to these rooted values and vital interests.
VI
Even if we were free to prefer Spencers dicta to the holding of Heck (not to mention Second Circuit precedent), the narrow exception' articulated by Justice Souter would not be applicable here. As discussed above, the motivating concern in the Spencer dicta was that circumstances beyond the control of a criminal defendant might deprive him of the opportunity to challenge a federal constitutional violation in federal court. Poventud is not such a person.
Poventud challenged his first conviction in state court and won — making it unnecessary for him to seek federal habeas relief. At that point, Poventud had the option of fighting at a new untainted trial or pleading guilty to the same crime on reduced charges and accepting a reduced sentence. He chose to plead. Poventud then had the option of filing a motion to challenge the voluntariness of his plea. He withdrew it.[11] It was therefore by no means “impossible as a matter of law” for Poventud to challenge his conviction and thereby satisfy Heck’s favorable termination requirement, Spencer v. Kemna, 523 U.S. 1, 21, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (Souter, J., concurring); he simply decided not to.
A guilty plea “represents a break in the chain of events which has preceded it in the criminal process,” Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and is accord: ed “a great measure of finality,” Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). “When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.” Tollett, 411 U.S. at 267, 93 S.Ct. 1602;[12] see also United States v. *76 Gregg, 463 F.3d 160, 164 (2d Cir.2006) (per curiam) (“[A] guilty plea ... conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]”). Poventud’s ability to attack his conviction therefore ended when he pled guilty to the hold-up. Cf. Pouncey v. Ryan, 396 F.Supp. 126, 128 (D.Conn.1975) (Newman, J'.) (relying on the “settled rule of law” that a civil suit may not be used to attack a criminal conviction and rejecting plaintiffs’ attempt “to undermine the finality that must be accorded the tactical decision the plaintiffs made in tendering their pleas of guilty”); Molina-Aviles v. Dist. of Columbia, 797 F.Supp.2d 1, 6-7 (D.D.C.2011)[13] (dismissing § 1983 claims following guilty pleas because plaintiffs had opportunities to challenge their pleas but instead filed damages claims, “thereby undermining Plaintiffs’ argument that Spencer applies because there are no habeas-type procedures available”).[14]
The majority hedges on this point: “Po-ventud’s guilty plea may (or may not) supply defendants with a defense[.]” Maj. Op. at 62. But a valid outstanding conviction does supply defendants with a defense— one that is complete and categorical. See Heck, 512 U.S. at 489, 114 S.Ct. 2364; Cameron v. Fogarty, 806 F.2d 380, 389 (2d Cir.1986).
Additionally, it cannot matter that Po-ventud’s guilty plea was to a lesser charge. The question remains whether success on Poventud’s § 1983 claim would necessarily imply the invalidity of the outstanding conviction. Heck, 512 U.S. at 487, 114 S.Ct. 2364. “[I]f a criminal conviction arising out of the same facts ... is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.” Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir.2005) (in banc) (citation and quotation marks omitted).
Several courts of this Circuit have dismissed § 1983 claims that sought damages for unlawful incarceration after the plaintiffs (like Poventud) pled guilty to lesser charges and were released from custody. For example, in McNeill v. People of City & State, No. 06-CV-4843 (NGG), 2006 WL 3050867 (Oct. 24, 2006), summarily aff'd, *77 242 Fed.Appx. 777 (2d Cir.2007), the vaca-tur of plaintiffs conviction for (inter alia) murder in the second degree was followed by his plea of guilty to assault (to avoid retrial) and his immediate release. Id. at *1. The district court, citing Heck, dismissed the plaintiffs § 1983 claims alleging false arrest, false imprisonment, and malicious prosecution. Id. This Court affirmed, with no opinion needed to do so, because although “[a]ppellant’s state court conviction was vacated, his subsequent guilty plea stands as a bar, under Heck, to a § 1983 action.” McNeill v. People of City & State of N.Y., 242 Fed.Appx. 777, 778 (2d Cir.2007).
District Judge Sotomayor (as she was then) reached a similar conclusion in Papeskov v. Brown, and this Court agreed. No. 97 Civ. 5351(SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998), summarily aff'd, 173 F.3d 845 (2d Cir.1999) (dismissing § 1983 action brought by former inmate who was charged with assault and criminal possession of a weapon and pled guilty to harassment); see also Stein v. Cnty. of Westchester, N.Y., 410 F.Supp.2d 175, 179 (S.D.N.Y.2006) (dismissing § 1983 action brought by former inmate who successfully challenged conviction for, inter alia, rape and sodomy, later pled guilty to endangering the welfare of a child, and filed suit upon release).
•These cases, non-binding as they are, nevertheless reflect the continued vitality of the Cameron line of precedent. McNeill is especially persuasive as a close analog; and both of my colleagues in the majority on the present panel sat on the panel in McNeill.
The majority relies on other courts’ opinions in cases that bear no resemblance whatsoever to the present. See Maj. Op. at 61-62 n. 2 (citing Smith v. Gonzales, 222 F.3d 1220 (10th Cir.2000) (holding that Heck was inapplicable where court vacated defendant’s conviction and government filed nolle prosequi indicating that it would not prosecute defendant’s case further); Davis v. Zain, 79 F.3d 18, 19 (5th Cir. 1996) (holding that Heck was inapplicable where court vacated defendant’s conviction, defendant filed § 1983 action while second trial was pending, and court found it “highly unlikely that Davis’s § 1983 suit will implicate the validity of his pending retrial”)). The majority’s labored search for support is telling.[15]
Some cases may present a difficult question as to whether the § 1983 action is fundamentally inconsistent with the defendant’s guilty plea. Cf. DiBlasio v. City of N.Y., 102 F.3d 654, 659 (2d Cir.1996) (Jacobs, J., concurring) (observing that a conviction on a lesser charge of drug possession might not bar the plaintiffs malicious prosecution claim for drug trafficking).[16] *78 A fact-intensive inquiry may sometimes be needed, see Covington v. City of New York, 171 F.3d 117, 122 (2d Cir.1999), but Poventud’s allocution is clear enough:
[THE COURT:] In this case it’s charged that on or about March 6, 1997, at approximately 8:40 in the evening, in the area of Oliver Place and Marion ... Avenue here in the County of the Bronx, you did attempt to steal personal property from another person by using force, in that you used a weapon in your attempt to steal personal property.
Are those charges true?
THE DEFENDANT: Yes.
A 93.
Poventud’s guilty plea placed him at the scene of the crime of which he was originally convicted, at the same time of the same day, wielding a weapon, and holding up the victim. Poventud’s § 1983 action calls that conviction and plea into question, challenging the victim’s identification of him as one of his attackers, and asserting that Poventud “spent the entire evening of March 6, 1997, through the morning of March 7, 1997, at the home of his friend ... playing video games. He was never anywhere near the vicinity of Oliver Place and Marion Avenue, where the shooting occurred.” A 106. Success on Poventud’s § 1983 action “would necessarily imply the invalidity” of his outstanding conviction. Heck, 512 U.S. at 487, 114 S.Ct. 2364. It is therefore barred by Heck.
The final section of the majority opinion introduces the idea that Poventud’s suit calls into question only his first conviction, not his second. See Maj. Op. at 64-65. As I have already shown, Poventud’s claim is premised on his innocence of a crime to which he pled guilty. See supra at 77-78. Accordingly, it is foreclosed by Heck, which bars both an action to recover damages for unconstitutional conviction or confinement, as well as an action “that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiffs criminal conviction was wrongful.” Heck, 512 U.S. at 487 n. 6, 114 S.Ct. 2364. Poventud’s claim does both: [i] he seeks damages directly attributable to his confinement, and [ii] success on his claim would necessarily imply that his conviction (by guilty plea) was wrongful. Poventud cannot evade this fact by “ ‘[s]eeking damages only for punishment he suffered in excess of the one-year imprisonment he accepted as part of his plea.’ ” Maj. Op. at 65 (quoting Appellant Br. 32).
Turning elsewhere, the majority posits the hypothetical of a defendant who is tortured, then confesses, then successfully challenges his conviction, then pleads guilty prior to retrial (under no compulsion), and is then released from prison. I have three short responses:
• Such a defendant would not need to rely on § 1983 because he could pursue intentional tort claims against the offending officers — state or federal. See N.Y. Ct. Cl. Act § 8 (McKinney) (waiving sovereign immunity); Millbrook v. United States, — U.S.-, 133 S.Ct. 1441, 1446, 185 L.Ed.2d 531 (2013) (holding that waiver of sovereign immunity under Federal Tort Claims Act for intentional acts committed by federal law enforcement was not limited to investigative activities).
• I agree with the majority that “the claim for damages for torture [would] in no *79 way undercut ] the second, and only existing, conviction and hence [would]. in no way [be] barred by Heck,” Maj. Op. at 65. That is because a claim for torture damages would not necessarily imply the invalidity of the defendant’s conviction. Cf. Jackson v. Suffolk Cnty. Homicide Bureau, 135 F.3d 254, 257 (2d Cir.1998) (holding that Heck did not bar Fifth Amendment claim for excessive force because “a finding that excessive force had in fact been used would not necessarily require invalidation of the conviction”). However, what the defendant categorically may not do is seek damages for “unlawful” confinement for criminal conduct that he freely admitted.
• The majority opinion thus illustrates the hazard of creating constitutional law under the influence of a seminar hypothetical.

. The Bronx District Attorney's Office considered this statement a "tentativo identification,” A 59, that tended to inculpate Poven-tud, A 75.

. Heck confirmed that this bar is not limited to false arrest, false imprisonment, and mali *68 cious prosecution claims: the plaintiff alleged, inter alia, that prosecutors " 'knowingly destroyed’ evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence[.]"’ 512 U.S. at 479, 114 S.Ct. 2364 (citation omitted); see also Channer v. Mitchell, 43 F.3d 786, 787 (2d Cir.1994) (per curiam); Rosato v. N.Y. Cnty. District Attorney’s Office, No. 09 Civ. 3742, 2009 WL 4790849, at *3-4 (S.D.N.Y. Dec. 14, 2009); Davison v. Reyes, 11-CV-167 ENV LB, 2012 WL 948591, at *3 (E.D.N.Y. Mar. 20, 2012). The majority opinion here mistakenly suggests that the bar is so limited, Maj. Op. at 64 n. 6, but prudently concludes that there is "no need" to consider this case law in any depth, id. at 63-64.

. Among other cases, the majority cites Jenkins v. Haubert, 179 F.3d 19 (2d Cir.1999) (Walker, J.), which was decided the same day as Leather. But, as discussed infra at 70-71, Jenkins involved a challenge to a prison disciplinary sanction (not the plaintiffs conviction itself), which plainly did not trigger the Heck bar. See id. at 27 ("[Njothing in Supreme Court precedent requires that the Heck rule be applied to a challenge by a prisoner to a term of disciplinary segregation^]”).

. The majority opinion wonders aloud why such cases were not challenged in banc. See Maj. Op. at 64. First, there is little point in mobilizing the Court in banc to excise dicta. Second, this Court is notoriously reluctant to sit in banc. See Ricci v. DeStefano, 530 F.3d 88, 93 (2d Cir.2008) (Jacobs, C.J., dissenting from denial of rehearing in banc) (arguing that "to rely on [Circuit] tradition to deny rehearing in banc starts to look very much like abuse of discretion”); see id. at 89 (Cala-bresi, J., concurring in denial of rehearing in banc) (concluding that in banc review is unnecessary even when "[difficult issues” are presented).

. The Ninth Circuit qualified its endorsement of the Spencer dicta further: the exception posited by Justice Souter " 'affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters,’ not challenges to an underlying conviction such as those Guerrero brought.” Guerrero, 442 F.3d at 705 (quoting Nonnette v. Small, 316 F.3d 872, 878 n. 7 (9th Cir.2002)).

. Of course, the Supreme Court is not obligated to adopt the narrowest holding possible. See Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 130 S.Ct. 876, 919, 175 L.Ed.2d 753 (2010) (Roberts, C.J., concurring) ("It should go without saying ... that we cannot embrace a narrow ground of decision simply because it is narrow; it must also be right."); In re McDonald, 205 F.3d 606, 612 (3d Cir. 2000) ("[A] holding ... extends beyond a statement of who won or lost a case. A court can choose among different holdings that offer broader or narrower ways of resolving a dispute.”). Lower courts therefore may not escape the reach of a Supreme Court opinion by limiting it to its facts. See generally Michael C. Dorf, Dicta and Article III, 142 U. Pa. L.Rev.1997, 2040 (1994) (explaining that courts should not cast aside as "mere dic-turn” an earlier ruling, regardless of "the relative merits of a broad or narrow decisional principle in the initial case”); Michael Abramowicz & Maxwell Stearns, Defining Dicta, 57 Stan. L.Rev. 953, 986 (2005) (“[B]readth does not make statements dicta.”).

. The Justice observed that although the case arose at the intersection of § 1983 and the federal habeas statute, the majority nonetheless "appearfed] to take the position that the statutes were never on a collision course in the first place.” Id. at 492, 114 S.Ct. 2364 (Souter, J., concurring). As Justice Souter explained, the Court reached this conclusion "because, like the common-law tort of malicious prosecution, § 1983 requires (and, presumably, has always required) plaintiffs seeking damages for unconstitutional conviction *72 or confinement to show the favorable termination of the underlying proceeding.” Id. Justice Souter then said why, in his view, this approach was flawed. Id. ,

. The majority satirizes this statement as circular (because I posit the unavailability of § 1983 as a possible basis for seeking habeas relief, the existence of which, in the majority’s view, would render § 1983 unavailable). See Maj. Op. at 65. But this text paragraph of my opinion merely lists remedies (aside from § 1983) that remain available to convicted criminals; it does not form a basis for con-eluding that Poventud’s § 1983 claim must be dismissed. Here, § 1983 is unavailable because the claim would undermine an outstanding conviction — without regard to whether habeas relief is also available. See Heck, 512 U.S. at 503, 114 S.Ct. 2364 (Souter, J., concurring) (criticizing the majority for imposing a favorable-termination requirement rather than “construing] § 1983 in *74 light of the habeas statute and its explicit policy of exhaustion”); Channer v. Mitchell, 43 F.3d 786, 787-88 (2d Cir.1994) (per curiam).
The majority’s error illuminates a more significant defect that pervades its entire analysis: a willingness to view this case through the eyes of a concurring opinion rather than the opinion of the Court.

. Additionally, a convict may seek a writ of error coram nobis from the court that rendered judgment against him—here, the New York Supreme Court. See United States v. Morgan, 346 U.S. 502, 507 n. 9, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Finkelstein v. Spitzer, 455 F.3d 131, 133-34 (2d Cir.2006). If successful, he may then pursue damages under § 1983.
To the extent that the majority relies on an implicit notion that New York courts are inadequate protectors of Poventud’s federal rights, I disagree for several reasons. [1] It was the New York Supreme Court that overturned Poventud’s original conviction on Brady grounds, a ruling that was quite solicitous given that the evidence withheld was arguably inculpatory (or, at best, a wash). [2] It would be unwise "to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities.” Huffman v. Pursue, Ltd., 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). [3] Plaintiffs may be able to file a § 1983 action seeking an injunction against any individuals who are impeding their efforts to appeal a conviction. See Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999) (dismissing § 1983 claim for damages under Heck because injunction was the appropriate remedy where plaintiff alleged that various state officials were "illegally blocking his access to state postconviction remedies”).

. See Custis v. United States, 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (" '[Ijnroads on the concept of finality tend to undermine confidence in the integrity of our procedures’ and inevitably delay and impair the orderly administration of justice.”) (quoting United States v. Addonizio, 442 U.S. 178, 184, n. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)). Moreover, "when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.’ ” Id. (quoting United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)).

. Poventud’s allegations of "gruesome and repetitive physical and sexual abuse” in prison are cited by the majority, presumably to imply that the government’s plea offer, resulting in immediate release, was one that could not be refused. Maj. Op. at 58-59. But it is naive to think that any plea is free from powerful pressures and influences, and that it is only the exceptional defendant who has reason to fear prison. Moreover, this argument is a red herring; Poventud withdrew his § 440 motion challenging the voluntariness of his guilty plea. However tantalizing the government's offer, Poventud swore in open court that he participated in the armed robbery charged in the indictment — which is of course the same crime of which he was convicted originally.

.The Tollett bar, distinct from the rule in Heck, is grounded in collateral estoppel rather than the plaintiff's inability to prove a key element of his claim. See Tollett, 411 U.S. at 267, 93 S.Ct. 1602; United States v. Podell, 572 F.2d 31, 35 (2d Cir.1978) ("It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.”). Certainly, some analytical overlap *76 exists, and in this arena too the Supreme Court has rejected the notion that a federal remedy must be available to criminal defendants seeking to challenge state convictions. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (" § 1983 did not open the way to relitigation of an issue that had been determined in a state criminal proceeding[.]”).

. The Molina-Aviles court- also held that “the fractured group of five concurring and dissenting Justices in Spencer cannot be found to have overruled the majority decision in Heck.” Molina-Aviles, 797 F.Supp.2d at 5-6. Up to this point, Molina-Aviles is the only decision within the D.C. Circuit to reach this issue.

. See also Domotor v. Wennet, 630 F.Supp.2d 1368, 1380 (S.D.Fla.2009) aff'd, 356 Fed. Appx. 316 (11th Cir.2009)(Heck applied where the plaintiff, although no longer in custody, "entered into a plea agreement with knowledge of all or substantially all of the allegations that now form the basis of a § 1983 action for damages"); Lewis v. City of Clarksburg, 1:11-CV-192, 2013 WL 529954, at *8 (N.D.W.Va. Feb. 11, 2013) (internal citation omitted) (defendants, who pleaded guilty and then filed § 1983 claim upon release from custody, “are not exempt from Heck's favorable termination requirement because their inability to obtain habeas relief is self-imposed, and not the consequence of any unforeseen turn of the law”). To allow defendants, after pleading guilty, to file § 1983 actions that call into question their convictions would "enable them to ‘end-run Heck,' and, at bottom, would confer on them the benefit of their plea bargain while shielding them from its consequences.” Lewis, 2013 WL 529954, at *8 (internal citation omitted).

. The majority observes that “at the time he pled guilty Poventud was aware of the Brady violation on which his present lawsuit is based.” Maj. Op. at 62 n. 2. This statement is puzzling. Of course Poventud was aware of the alleged Brady violation; his conviction had just been overturned on that basis. Surely the point is that he chose to plead guilty to the crime rather than face retrial.

. United States v. Gregg, 463 F.3d 160, 163-65 (2d Cir.2006) (per curiam) offers another helpful contrast. There, we considered whether a defendant's guilty plea to a state charge of criminal impersonation barred him from raising a Fourth Amendment challenge to a federal firearms charge arising from the same events. Id. at 162. Because the firearm seizure "simply was not at issue” when the defendant pleaded guilty to criminal impersonation, his guilty plea did not bar a subsequent challenge to the search. Id. at 166. However, "were Gregg challenging ... the discovery of the evidence supporting the criminal impersonation charge to which he pled guilty, then ... Gregg’s Fourth Amendment claims would be foreclosed." Id. (emphasis added).
*78 If Poventud had pled guilty to an unrelated charge, or if his § 1983 claim had alleged unrelated police misconduct, then Poventud’s § 1983 action might not have undermined his plea, making the case arguably more akin to Gregg and DiBlasio.